# THE BALTIMORE AND POTOMAC RAILROAD COMPANY.

## *v.*

## GOLWAY.

PRACTICE; NEGLIGENCE; RAILROADS; CROSSINGS; SPEED OF TRAINS; MUNICIPAL ORDINANCE; SIGNALS; MEASURE OF DAMAGES.

1. It is only where but one reasonable view can be taken of the evidence and of its every intendment, and that view is utterly opposed to the plaintiff's right to recover, that a case should be withdrawn from the jury; *following* Railroad Co. *v.* Carrington, 3 App. D. C. 101.

2. Wherever there is any uncertainty as to the existence of either negligence or contributory negligence, the question must be left to the jury; *following* Walter *v.* Railroad Co., *ante*, p. 20.

3. In a suit for damages against a railroad company, where plaintiff's intestate was killed at a point which the testimony tended to show was used as a crossing, it is proper for the trial court to instruct the jury as to the distinction between the degree of care which a railroad company is bound to exercise towards a mere trespasser on its tracks and those who may have occasion to cross them at a place commonly used and resorted to for that purpose.

4. In such a case it is also proper for the trial court to charge the jury that the failure by the railroad company to observe a city ordinance regulating the speed of trains, would be negligence, the effect of which they might consider in determining whether the injury to deceased was the result of his own or defendant's want of care.

5. A city ordinance prohibiting railroads from ringing bells and sounding whistles within the city limits cannot be availed of by the defendant for the first time on appeal in such a case to show that the trial court erred in its charge as to the effect of a failure of the defendant to give proper warning of the approach of trains.

6. In the absence of a statute or ordinance governing the precaution to be observed by railroads at crossings, it is a mixed question of law and fact to be determined by the jury under the direction of the court, what may or may not have been under all the circumstances reasonable and proper precautions, warnings and signals to prevent an accident.

7. In a suit for damages for death by wrongful act, where deceased leaves a widow and four sons, one of whom is a minor, an instruction to the jury is erroneous which says that in estimating damages they are to consider reasonable expectations of prospective inheritance from deceased, prospective support, gifts, paternal advice and guidance and maintenance.

No. 394.   Submitted April 3, 1895.   Decided May 6, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action for damages for death by alleged wrongful act. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an appeal from a judgment recovered by the administrator of the estate of William Golway, deceased, against the appellant, for the negligent killing of said intestate, at a point on its railway in the city of Washington, June 11, 1888.

The accident occurred on the railway track in Water street, or what would be Water street if improved, at a point between what would be East 14th and East 15th streets, if improved, to the Eastern Branch of the Potomac across Water street. The railway crosses the Eastern Branch and enters the city somewhere between south L and M streets and curving to the right and west runs about 2,500 feet to where it enters a tunnel which ends near 6th and K streets.

For a considerable distance each side of where deceased was killed the hill and banks on the north side of the track are very high and the streets are not opened through them and across the tracks. But the evidence shows that some footpaths coming down the hill converge at or near that point, and had been used for many years before the building of the railway to obtain access to the river where there had been a ferry landing; and that they had been constantly used after the building of the railway by persons. desiring to go to the river bank and upon the commons adjacent. At this path crossing there were three railway

tracks. The most southern one was used by trains going east, or out of Washington, the next one by trains coming in, and the third was a siding on which cars were frequently left to stand. There was also a similar track beginning a little east of where deceased was killed and running north of east to a warehouse, part of the way up the hill. The main tracks. made a considerable curve at that time, about 450 feet east of the path crossing, and the evidence tended to show that a train coming from that direction could probably be seen from 375 to 450 feet therefrom. There was also testimony tending to show that the distance from whence it could be seen was much less than 450 feet, especially when cars were standing on the siding, which seems to have been the case at the time of the accident.

Deceased, accompanied by his wife and three young ladies, Miss Grimes and two Misses Shelton, had left his home on the north side and gone across the tracks at another place, late in the afternoon, visiting the new gas works and walking on the commons. They returned by way of the path crossing aforesaid, intending to go by the warehouse at the end of the switch track. As they neared the tracks a train passed, going east, for which they waited and then started across. Mrs. Golway and Miss Grimes were in front, and crossed the tracks safely. Deceased was just behind them and was in the act of stepping off and away from the center track when he was struck by the bumper of the engine of a west-bound passenger express train and instantly killed. The Misses Shelton were in the rear and had not quite reached the track when the engine came. Plaintiff's evidence tended to show that the train was running from 30 to 40 miles an hour and that the parties neither saw nor heard it coming; nor did they hear any signal of warning save the whistle which sounded about the time the engine struck deceased.

On behalf of defendant there was evidence. tending to show that the train was not running faster than 25 miles an hour, and was on regular time; that the bell had been rung

without cessation from the time of passing Bennings Station; that deceased was seen as the engine came around the curve and the whistle was sounded; that he got off the track and then turned and started back, at which time it was too late to stop, although the brakes were immediately applied. The regulations of the District Commissioners, in force since 1887, prohibited the running of trains at a rate of speed exceeding 12 miles an hour.

[At the trial, seven instructions were requested on behalf of the plaintiff, all of which were granted over the objection of the defendant as follows:

" 1. If the jury find from the evidence that the locality at which this injury occurred was, and for a long time before and since the construction of the defendant's railroad had been, open ground or a common frequented by the public; that there were well-defined pathways, used by the public in traversing the said grounds and in passing up the adjoining hillside to the level ground above with the knowledge of and without the objection of the defendant; that the deceased and those accompanying him had been on these grounds or common and were passing along these pathways which had been intersected by defendant's road; that these pathways were the ordinary and usual places or lines in travel for pedestrians passing along and through the locality mentioned; that the deceased and those accompanying him were passing along these usual lines or paths for the purpose of going from one side of defendant's road to the other; that the place aforesaid was within the limits of the city of Washington; that the defendant's roadway, by reason of the topography of the country at the place where said road crossed the said pathway, was such that a view of the approaching train could not be had for a greater distance than from fifty to four hundred and fifty feet, and that the defendant company ran the train which caused the injury, within the limits of the city of Washington as aforesaid, at a rate of speed from twenty-five to forty miles an hour, these facts, if they are facts proved by the evidence,

together with all evidence touching any signals that may
have been proved to have been given and all the other
facts or circumstances proved in the case, are to be consid-
ered by the jury in determining whether the defendant was
guilty of negligence, and if you find that defendant was
so guilty, in the absence of evidence showing that the de-
ceased contributed to the accident by his own negligence,
which caused the loss of his life, it would be the duty of
the jury to find for the plaintiff.

" 2. The jury is instructed, as a matter of law, that the
defendant had no right to run its train inside the limits of
the city of Washington at a greater rate of speed than
twelve miles an hour, and if the jury find from the evidence
that by reason of the curvature of the road at or near the
point in question the train could not be seen approaching
the point where the injury happened and where the path-
way crossed the railroad, alluded to in prayer No. 1, for a
greater distance than from about three hundred and fifty to
four hundred and fifty feet, and that the topography of the
country was such as to interfere with or tend to prevent
knowledge of the approach of a train by either noise made
by the train or by the whistling or ringing of the bell, and
if the jury further find from the evidence that the place in
question was one that was frequented by the public, and
that the place in question was one where the public was
accustomed to pass and repass and had been for many years
before defendant's road was built, since the building of said
road and at the time of the accident, with the knowledge of
and without the objection of the said defendant, then from
these facts, if they are established by the evidence, and that
no signal was given of the approach of the train, the jury
would be justified in finding that the defendant was guilty
of negligence in running its train at the place in question
at a higher rate of speed than that which was permitted or
authorized by law in such cases.

" 3. If the jury find from the evidence that there was
within about three hundred and fifty to four hundred and

fifty feet from the place where the decedent met his death, a curve in the road around the point of an elevation, which elevation was of such a character as that it prevented persons crossing the track at the places referred to from seeing the train until it had approached within the distance aforesaid, and which also tended to prevent persons who might be crossing the track at that place from having notice of the approach of the train by the sound made by the train or by the blowing of the whistle or the ringing of a bell; and if the jury further find that the place at which the accident occurred was one that was commonly used by the public as a crossing with the knowledge of and without objection by the defendant, then it was the duty of the defendant to exercise greater care and use greater precaution in running its trains at that place than would have been required if there had been no such crossing; and if the defendant ran its train around said curve at a rate of speed in excess of the speed authorized by law, such facts would tend to show that the defendant was guilty of negligence in so running its train, and if from all the evidence the jury find that the defendant was guilty of negligence their verdict should be for the plaintiff unless the evidence shows that the deceased was guilty of contributory negligence.

" 4. If the jury find from the evidence that at the locality where this accident occurred there were and for a long time prior to the construction of defendant's road had been well-defined pathways along which the public was accustomed to travel; that these pathways were crossed or intersected by defendant's road; that the deceased and those accompanying him were travelling along these pathways where the public were accustomed to travel with the knowledge of and without objection by the said defendant, then the jury is instructed as a matter of law that the deceased had the right to cross the defendant's road along the line of said pathway and was not a tresspasser upon the defendant's property in so doing.

" 4¼. The jury are further instructed that the burden of

proving that plaintiff's intestate was guilty of contributory negligence is upon the defendant, and in the absence of proof to the contrary the law presumes that plaintiff's intestate was exercising reasonable and proper care and caution at the time he was killed.

" 4½. If the jury find from the evidence that the place at which the deceased was killed was within the limits of the city of Washington ; that for a long time prior to the construction of defendant's road there had been pathways along which the public had been accustomed to pass and which had constantly been used by the public ; that the said pathways were intersected by the defendant's road ; that after the construction of the defendant's road the public continued to use such portions of pathway and in the use thereof were accustomed to cross said road of defendant with the knowledge of and without objection by the defendant, then it was the duty of the defendant to take and use all reasonable precautions to warn the public of the approach of trains at such crossings, and a failure of the defendant to do this would warrant the jury in finding that the defendant was guilty of negligence, and in determining whether there was or was not such negligence the jury should take into consideration the topography of the adjacent country and obstacles that may have been placed there by the defendant, and what, if any, signals were given of the approaching train and the time they were given if they were given.

" 5. The jury is instructed that if they find for the plaintiff, the measure of damages is the pecuniary loss sustained by the widow and next of kin by reason of the death of the deceased ; that in estimating damages the jury are to take into consideration any prospective inheritance the widow and next of kin of the deceased might reasonably have expected to derive from him, any prospective support that would have been received, and also the value of his parental advice and guidance, and this is to be considered with reference to any minor child who was living with him

in so far as the jury may be able to fix a pecuniary value upon it. To such extent as the jury may find that they were of pecuniary value you will take that pecuniary value into account in estimating the damages, and in estimating the damages with reference to the items of prospective inheritance, gifts and legal support, maintenance, the health and strength of the deceased and his advice and counsel, the jury should take into consideration the nature of the employment of the deceased and the remuneration therefor, together with the prospective duration of his life."

On behalf of the defendant, the following twelve instructions were requested, those numbered from 1 to 6 of which were granted and the others refused, to the refusal of each of which the defendant duly excepted :

" 1. Before the jury can find a verdict in favor of the plaintiff they must be satisfied from the evidence that the defendant was guilty of negligence, which was the direct cause of the accident, and the burden of proof is upon the plaintiff to show by evidence satisfactory to the jury that the defendant was guilty of such negligence.

" 2. If the jury shall be satisfied from the evidence that the intestate, Golway, was guilty of any negligence contributing directly in any degree to the accident, then the fact that the train which caused his death was running at a high rate of speed is wholly immaterial and should not be considered by the jury, and the verdict must be for the defendant.

" 3. It was the duty of the plaintiff's intestate before he attempted to cross the railroad tracks at the time and place in question to look both up and down the railroad for approaching trains, and also to listen for such trains ; and if the jury shall be satisfied from the evidence that said Golway neglected to so look or listen, and that in consequence of such neglect he was struck and killed, the plaintiff cannot be allowed to recover, and the verdict must be for the defendant.

" 4. Although the widow and children of the deceased may be entitled to great sympathy for their loss, yet under

the statute which created this right of action the damages are confined entirely to pecuniary loss, and nothing can be estimated or allowed against the defendant in this action on account of any sympathy or compassion to which such widow and children may be entitled.

" 5.  And in estimating such damages the jury are limited to the consideration of pecuniary loss entirely, and nothing can be estimated or allowed for the shock, the grief, or mental pain or suffering of the widow or children and nothing can be estimated or allowed for the loss of the society of the deceased nor for the pain or suffering of the deceased nor for funeral or other expenses, and nothing can be estimated for punitive or exemplary damages or smart money against the defendant because it is a railroad company and its train caused the death of the plaintiff's intestate.

" 6.  If the jury shall find for the plaintiff, then the measure of damages will be the amount of pecuniary loss actually sustained by the widow and children left surviving the deceased by the reason of his death ; but the burden of proof rests upon the plaintiff to satisfy the jury by evidence that said widow and children of the deceased did by reason of such death sustain pecuniary loss and the extent thereof.

" 7.  The jury are instructed that the fact that there were high banks along the north side of the railroad track extending from the east side of the cold-storage warehouse around northward to the curve cannot be considered by them as evidence tending to prove negligence on the part of the defendant company.

" 8.  It was the duty of the plaintiff's intestate, before he attempted to cross the railroad tracks at the time and place in question, to look both up and down the railroad for approaching trains, and also to listen for such trains, and if the jury shall be satisfied from the evidence that said plaintiff's intestate neglected to so look and listen the plaintiff cannot be allowed to recover, and the verdict must be for the defendant.

" 9.  The jury are instructed that the defendant was not re-

quired by law to exercise any greater degree of care in running its trains at the point of the accident because of the use by the public of a foot-path across its tracks at that point than it would have been had there been no foot-path there.

"10. Although the jury may be satisfied from the evidence that the defendant's train at the time of the accident was moving at a greater rate of speed than is allowed by regulations, yet that fact cannot in this case be considered against the defendant as evidence tending to prove negligence.

"11. Although the jury may be satisfied from the evidence that there were several freight cars standing on the siding near the cold-storage warehouse, and that they more or less obstructed the view from the point of the accident, yet that fact cannot be considered by the jury as evidence tending to prove negligence on the part of the defendant.

"12. On the whole evidence in the case the defendant is entitled to the verdict."

The court below, after stating the facts, of its own motion charged the jury as follows :

" The act of Congress referred to in the declaration provides substantially as follows :

" 'That whenever, by an injury done or happening within the limits of the District of Columbia, the death of any person shall be caused by the wrongful act, neglect or default of any person or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured, or, if the person injured be a married woman, have entitled her husband, either separately or by joining with the wife, to maintain an action and recover damages, the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured shall have been caused under circumstances which constitute a

felony; and such damages shall be assessed with reference to the injury resulting from such act, neg-neglect, or default causing such death, to the widow and next of kin of such deceased person; provided, that in no case shall the recovery under this act exceed the sum of ten thousand dollars; and provided further, that no action shall be maintained under this act in any case when the party injured by such wrongful act, neglect or default has recovered damages therefor during the life of such party.

" 'SEC. 2. That every such action shall be brought by and in the name of the personal representative of such deceased person and within one year after the death of the party injured.' 25th Statutes at Large.

" The action which the plaintiff has commenced and which is set forth in the declaration, as I have stated it to you, is authorized by the act of Congress which I have read, and, in so far as it is limited by the provisions of that act of Congress, those limitations and the provisions of the act must be strictly observed by the court and the jury in the trial of the cause.

" There are a number of propositions which it will be necessary for you to consider in your retirement, most of which propositions are indicated by instructions which counsel have prepared and have asked the court to give, and the court having considered the prayers that have been asked by counsel for the plaintiff and for the defendant, has concluded upon the giving of those which it is proper to give as the law to govern your action in this case. I know of no better way than to give you the instruction which has been proposed by the parties and to make any further or additional remarks that may seem to be pertinent and proper.

" The first prayer asked on behalf of the plaintiff is given to you as the law of this case and is as follows:" The court here read the instruction referred to and proceeded:

" You will perceive, gentlemen, that this states a number of propositions or matters to which your attention should be called because of the evidence in the case (and if you find from those circumstances and all other circumstances shown by the evidence in the case, if any are omitted, that the defendant was negligent, and you further find that the deceased, Mr. Golway, was not negligent himself and did not contribute to his own death by his own negligence, and that the defendant was negligent), then you should find a verdict for the plaintiff.

" The second prayer for the plaintiff is given to you as the law of this case. It is very nearly akin to the first instruction given to you and is as follows : " The court here read the instruction referred to.

" Perhaps I can state this proposition in a few words. (It is a statement of at least some of the circumstances which the evidence developed surrounding the situation at the time of this accident. You are instructed to take those circumstances into consideration and all the circumstances which are developed by the evidence as being present at the time of this accident, and if, under such circumstances, you find that the defendant ran its train which came into collision with the deceased at a greater rate of speed than twelve miles per hour, you will be authorized to regard that as negligence on the part of the defendant, and that is the only conclusion that you are asked to come to from this instruction. It defines the conditions upon which you would be entitled to consider the running of the train at a greater rate of speed than twelve miles an hour as amounting to negligence. As to whether or not that negligence, together with any other negligence there may be in the case, or that you may find in the case, if you find any other negligence, amounts to such negligence as, in your judgment, contributed directly to the death or directly caused the death of the decedent, Golway, it is for you to determine from this fact and all the other facts in the case. It is intended to be a demonstration of

the circumstances under which you would be entitled to re-
gard the running of the train at a greater rate than twelve
miles an hour as a negligent act on the part of the defen-
dant to be of such weight as you may think proper to give
to it in connection with all the evidence in the case upon
the final question as to whether the defendant was guilty of
negligence which caused the death of the deceased
Golway.)

"The third instruction asked for by the plaintiff is given
to you as the law of this case, and is in the following lan-
guage:" The instruction referred to was here read by the
court.

"The next instruction which I will read to you is number
four and a-half for the plaintiff, which is given to you as the
law and is as follows:" The court here read the instruc-
tion referred to and proceeded:

(In connection with this instruction, gentlemen of the
jury, you may consider the evidence as to whether any sig-
nals were given, as to whether the bell of the engine was
rung, and, if so, when and where, at what time, and at what
distance from the point of this crossing; if it was done at
all, whether it was done, in your judgment, at such time as
the exercise of ordinary care and prudence would require
in order to prevent accidents or danger to human life. There
is some evidence *pro* and *con*, and you will consider that
evidence in that connection and determine for yourselves
what the fact regarding the giving of signals is; and when
you have determined what was the fact and whether what
was done was what was required of the defendant under
such circumstances with reference to the exercise of ordi-
nary care and prudence in the running of that train so as
not to injure persons who might be there crossing the tracks
or in the neighborhood of the tracks, so as to suffer injury
at that point.)

"I will give you now number four and a-quarter and
number four of the plaintiff's, as the law of this case, as
follows:" These instructions were here read.

" The prayers which I have read to you are those which have been granted on the application of the plaintiff and are to be regarded by you as the law. I now proceed to give you some prayers which have been asked by the defendant and granted by the court." Defendant's instructions numbered 1, 2 and 3 were here read, and the court proceeded.

" You will see, gentlemen of the jury, by comparing these prayers which I have given you for the plaintiff and defendant that there is no conflict between them. The instructions which I have given you, as prayed by both parties, require that before you shall give a verdict against the defendant you must find that the defendant was guilty of negligence which contributed to and caused the death of the deceased, and, in addition to that, before you can return a verdict for. the plaintiff for such negligence, if you shall find that the defendant was guilty of such negligence which caused the death of the deceased, you must find that the evidence does not show that the plaintiff was guilty of what is called contributory negligence—that is, not guilty of such negligence as contributed directly to cause his own death.

" It is true that the plaintiff is only bound to prove the negligence of the defendant, and upon so proving the negligence of the defendant may rest and claim a verdict at the hands of the jury unless his own evidence shall disclose that he was himself negligent or that in this case the deceased was negligent in such manner as that his own negligence contributed to cause his own death. If the plaintiff's evidence discloses that, then the defendant may avail himself of it and object to a verdict, notwithstanding his own negligence. If it be found by the jury that the plaintiff's evidence shows that he was negligent, it would be the duty of the jury to return a verdict for the defendant ; but the defendant having offered its evidence in this case, if the jury find from the evidence in the whole case, both that offered by the plaintiff as well as that offered by the defendant,

that the defendant was negligent, and that negligence contributed directly to cause the death of the deceased, and shall further find from the evidence that the deceased was also negligent and failed to adopt such precautions for his own safety as a man of ordinary care and prudence should adopt in such a place and under such circumstances as he was placed in at that time, then the plaintiff would not be entitled to a verdict, and it should be your duty to return a verdict for the defendant.

" (If in looking at all of the circumstances in the case and all of the evidence in the case, both for the plaintiff and for the defendant, you fail to find any evidence which either proves to you that he did use the precaution or that he did not use precaution, the presumption would be, as I have instructed you at the request of the plaintiff, that the deceased was prudent, there being no evidence to the contrary, and the rule of law being that it is the duty of the defendant to produce the evidence showing the negligence on the part of the deceased. Where a plaintiff is living and brings an action for his own injury, then it is on the part of the plaintiff. In this case it was the duty of the defendant to procure evidence to show that the deceased was negligent and did not conduct himself in that situation as a man of ordinary prudence and caution would have done.)

" You will thus see, I think, pretty plainly your duty in this case. It is not for the court to discuss the evidence. The evidence is not so very voluminous. You have listened to it carefully. It has been discussed, and your attention has been called to it by counsel for the plaintiff and for the defendant and your minds have been refreshed in that respect. It is for you to remember the testimony and to apply to the testimony and to the consideration of the testimony such rules of law as the court gives you in its charge and to come to your conclusion as to what your verdict should be—either for the plaintiff or for the defendant.

"If you shall find, upon a fair consideration of this evidence, that the defendant was guilty of negligence contributing directly to the death of the deceased, and that the deceased was not himself negligent, but acted as an ordinarily prudent man would under the same circumstances, or if you find that the defendant has failed to prove and that there is not disclosed in the evidence of the plaintiff any evidence of facts or circumstances from which you can infer that the deceased was negligent, then it will be your duty to return a verdict for the plaintiff and against the defendant.

"It will then become your duty to determine what damages you shall give to the plaintiff. In that connection I give to you prayer number five asked by the plaintiff, which is as follows:" The court here read the instruction referred to.

"There are some instructions upon the question of damages which are asked by the defendant, which I also will give you." Defendant's instructions numbered 4, 5 and 6 were here read.

"It is probably proper to remark to you that it is not necessary that the plaintiff should prove exactly in dollars and cents the amount of pecuniary loss which the widow and children sustained by reason of the death of the deceased. It is only necessary that their relations be shown; their situation in life, their ages, the age of the deceased, his state of health, his ability to labor, his ability to earn money, and his ability to make money might also be given in evidence for the purpose of enabling you to determine, as men of judgment and observation, how much in your judgment, taking the probable length of his life and his ability to make money and the advantage in a pecuniary way he would have been to his widow and children had he lived—how much damage, in your judgment, looking at all these circumstances, the widow and children have suffered by reason of the death of the father and husband.

"Having reached a conclusion as to that amount which no

one can direct you in coming to a conclusion about, you should return your verdict. It is left to your sound judgment, looking at all the circumstances, as to what the amount should be, and when you have found that amount that sum should constitute your verdict in favor of the plaintiff.

"As I have read to you in the prayers given to you in charge at the request of the defendant, you cannot allow anything on the ground of sympathy for the bereaved children and widow ; you cannot allow anything for their suffering or for their sorrow in the loss of the husband and father. The statute does not allow it, and you have not the power to do so, and if you should do it you would do it wrongfully and without authority of law. You cannot allow anything for medical services, funeral expenses, or any matter of that kind, but simply what the statute in express language says you may allow for, and that is the pecuniary loss or the loss of the value of the life of the husband and father to the widow and children. That value you must ascertain in the manner in which I have stated. It is a matter of sound discretion and judgment, looking to his age, his state of health, and his ability to earn money and what it might and in your judgment probably would have amounted to had he been permitted to live."

The portions of the charge enclosed in parentheses were excepted to by the defendant.—REPORTER.]

*Mr. Enoch Totten* for the appellant :

1. The plaintiff's intestate was guilty of negligence, and such negligence was the cause of his death, and the court should have instructed the jury at the close of the evidence to render a verdict in favor of the defendant. The authorities in support of this proposition are abundant. *Houston* v. *Railroad Co.*, 95 U. S. 700 ; *Elliott* v. *Railroad Co.*, 150 U. S. 245.

The engineman had a right to suppose that the deceased

would use his senses and keep out of the way of the train, and that he would not walk blindly into the place of destruction. *Railroad Co.* v. *Miller*, 25 Mich. 279.

2. Railroad companies are not bound to *insure* travellers at crossings against accidents, but only to take such care as reasonable men would take under the circumstances existing at such places. Before a court can determine what constitutes reasonably sufficient precautions, evidence on the subject must be submitted to show what is reasonable under all the circumstances. Such a question cannot, in any event, be submitted to the determination of a jury. *Dyer* v. *Railroad Co.*, 71 N. Y. 288 ; *Beisiegel* v. *Railroad Co.*, 40 N. Y. 9 ; *Weber* v. *Railroad Co.*, 58 N. Y. 457 ; *Pakalinsky* v. *Railroad Co.*, 82 N. Y. 427; *State* v. *Railroad Co.*, 47 Md. 76 ; *Cliff* v. *Railroad Co.*, L. R. 5 Q. B. 258 ; see also *Culhane* v. *Railroad Co.*, 60 N. Y. 133 ; *Reynolds* v. *Railroad Co.*, 58 N. Y. 248 ; *Ellis* v. *Railroad Co.*, L. R. 9 C. P. (Exch. Ch.) 554 ; Wharton on Neg. § 798 ; *Morrison* v. *Curtis*, 126 Mass. 377 ; *Stubley* v. *Railroad Co.*, L. R. 1 Exch. 13 ; *Springman* v. *Railroad Co.*, 5 Mackey, 1; *Hass* v. *Railroad Co.*, 47 Mich. 401.

3. The plaintiff's prayer numbered 4 is erroneous because it instructs the jury that in view of the testimony in the case showing the use of the pathway across the tracks the deceased had the right to cross the tracks and was not a trespasser. The evidence does not show such a public use of the tracks at this point as amounted to a license to all comers to go upon the defendant's private right of way, and there was no sufficient evidence that the defendant's officers or agents had any knowledge of such use as actually was had.

4. The prayer numbered 5 granted to the plaintiff, relates to the damages. It instructs the jury, as a matter of law, that in estimating damages they might consider any " prospective inheritance the widow and next of kin might reasonably have expected to derive from him." Precisely what the jury understood by this it is difficult to conjec-

ture; a widow cannot be properly said to inherit anything from her husband, either prospectively or otherwise. This language must have confused the jury. It also introduces an element of damages which is new in this District, and that is "parental advice and guidance" and "advice and counsel" of the deceased. The jury were told to estimate the value of "parental advice and counsel." This was error. To ascertain or calculate the pecuniary value of parental advice, guidance, or counsel would be like calculating the abstract value of a human life. Even if such advice, counsel and guidance could be calculated in dollars and cents, it would hardly be a proper element here, inasmuch as the youngest child was over 20 years of age at the time of the accident. But the rule is settled against this. 2 Shear. & R. on Neg. sec. 766–772.

The jury was also told to estimate for "gifts." If there had been any evidence tending to show that the deceased was accustomed, at stated times, to make presents to his children, there might have been some ground to sustain this part of the instruction; but in the absence of any evidence on the subject the instruction, in this respect, was erroneous. 2 Shear. & R. on Neg., sec. 769.

*Mr. Eugene F. Arnold* and *Messrs. Shellabarger & Wilson* for the appellee :

The exception to the instruction granted on behalf of the plaintiff as to the measure of damages cannot be entertained for the obvious reason that the instruction excepted to contains a series of propositions, some of which are plainly correct, and the exception does not point out the objectionable one. An exception in gross to a series of propositions cannot be sustained if any one is sound. *Beaver* v. *Taylor*, 93 U. S. 46; *Railroad Co.* v. *Horst*, 93 U. S. 291 ; *Lincoln* v. *Claflin*, 7 Wall. 132 ; *Beckwith* v. *Bean*, 98 U. S. 266; *Cooper* v. *Schlesinger*, 111 U. S. 148; *Barton* v. *West Jersey Co.*, 114 U. S. 474.

The jury could not have been in any way misled by the plaintiff's instruction as to the elements proper to be taken into consideration in estimating the *amount* of pecuniary loss. In the recent case of the *District of Columbia* v. *Wilcox*, 4 App. D. C. 90, this court, in the language of the Supreme Court of the United States in *Railroad Co.* v. *Whitton*, 13 Wall. 270, say : " Nor is a judgment to be set aside because the charge of the court may be open to some verbal criticisms in particulars considered apart by themselves, which could not, when taken with the rest of the charge, have misled a jury of ordinary intelligence." See also, *G. T. Railway* v. *Ives*, 144 U. S. 409.

The jury were not misled by the words : " That in estimating damages the jury are to take into consideration any prospective inheritance the widow and next of kin of the deceased might reasonably have expected to derive from him." The jury knew that the wife is entitled to her dower and to her share of her husband's personalty at his death, and whether the right of this wife to the property of the husband after his death was called " inheritance " or by other name did not confuse the jury, for they understood just what was meant. All the books and cases and all men use the word " inheritance " to comprehend either personal or real property, and usage is the law of language. See Tiffany, Death by Wr. Act, sec. 171 (cases), sec. 93 ; *Railway Co.* v. *Needham*, 52 F. R. 371.

But the jury were not merely to consider any prospective inheritance the widow, alone, might reasonably have been expected to derive from decedent had he lived, but any prospective inheritance the widow and next of kin might reasonably have been expected to derive from him. Whether or not the widow might have derived any inheritance, or property, from him after his death, had he lived to accumulate the same, it cannot be disputed that, from the evidence, the decedent's next of kin, his children, might reasonably have expected to derive such prospective inheritance from him had he not been killed. *District of Columbia* v. *Wilcox, supra.*

The recovery under the statute is *in solido* and it is not necessary that the widow, or each of the next of kin, has sustained an equal, or *any* share, in the loss consequent upon the death. The damages recovered for loss of prospective bounty, inheritance, etc., represent only the *aggregate* of such loss by the widow and the next of kin, each of whom may or may not in an equal, or in any degree, be involved in the loss. *Railway Co.* v. *Needham*, 52 F. R. 374.

In the Wilcox case, *supra*, this court followed the ruling of the Supreme Court in the case of *Railroad Co.* v. *Barron*, 5 Wall. 90, where the Illinois statute, which is substantially similar, except that it uses the word pecuniary, to the act of Congress, was under consideration. In the Barron case, the deceased was never married, and his surviving next of kin were his father, brothers and sisters.

The undisputed evidence was that the decedent, Golway, had accumulated eight or ten thousand dollars as a result of his industry, thrift and saving habits, and from that evidence the jury might fairly conclude that *such a man* would have further accumulated had he lived. This probable future accumulation, this probable prospective inheritance, was, of course, lost to his widow and children by his untimely death. As to the earning capacity of the deceased, his character and habits, see: *Hudson* v. *Houser*, 123 Ind. 309; *Bolinger* v. *Railroad Co.*, 36 Minn. 418; *Clap* v. *Railroad Co.*, 36 Minn. 6; *Hogue* v. *Railroad Co.*, 32 F. R. 365; *Railroad Co.* v. *Weightman*, 29 Grat. 431; *Burton* v. *Railroad Co.*, 82 N. C. 504; *Railway Co.* v. *Johnson*, 78 Tex. 536; *Railroad Co.* v. *Ogmond*, 64 Tex. 485. As to accumulation of property by decedent, see: *Phelps* v. *Railroad Co.*, 37 Minn. 485; *Shaber* v. *Railway Co.*, 28 Minn. 103; *Apsahl* v. *Judd*, 30 Minn. 128; *Railway Co.* v. *Barron, supra*.

Another objection made in appellant's brief to the instruction as to damages, granted at the request of plaintiff, is that said prayer says that in estimating damages the jury

may consider the value of decedent's " parental advice and guidance" and " advice and counsel" * * " with reference to any minor child who was living with him, in so far as the jury may be able to fix a *pecuniary* value upon it." We submit that this was not erroneous. *Tilley* v. *Railroad Co.*, 29 N. Y. 252; *County Comr's* v. *Legg*, 93 Ind. 523.

One of the leading cases in this country upon this question is *Tilley* v. *The H. R. Railroad Co.*, which was before the Court of Appeals on two occasions and decided in the 24 N. Y. 471, and the 29 N. Y. 252. The statute under which this case was decided differs from ours, in that it directs that the jury shall assess the damage with reference to the *pecuniary* injury sustained.

Our statute contains no such limitation. The jury under our statute shall assess the damages, " with reference to the *injury* resulting from such act."

It was argued in the Tilley case that the loss must be confined to those *of a strictly pecuniary character*, but the court held that in estimating the *pecuniary* injury, the jury might take into consideration the *nurture, instruction and physical, moral and intellectual training* which (in that case the mother), gave to the children.

The Supreme Court of the United States, in considering a case that went up from Wisconsin, involving this question under a statute of that State, taken from the New York statute and identical with it, approve the instruction given by the court below to the jury, in which they say : " Taking all the facts and circumstances into consideration, you may consider the personal qualities, the ability to be useful of the party who has met with death, and, of course, also the capacity to earn money." *Railway Co.* v. *Whitton*, 13 Wall. 270. See also : *Railway Co.* v. *Barron*, 5 Wall. 60 ; *Bolinger* v. *Railroad Co.*, 36 Minn. 418 ; *State* v. *Railroad Co.*, 57 Mich. 239 ; *Railroad Co.* v. *State*, 24 Md. 271 ; *Kelley* v. *Railroad Co.*, 50 Wis. 381 ; *Stohn* v. *Railroad Co.*, 91 Mo. 509; *Searle* v. *Railroad Co.*, 32 W. Va. 370 ;

*Railroad Co.* v. *Weightman,* 29 Gratt. 431 ; *Pym* v. *Railway Co.,* 2 B. & S. 759.

Mr. Justice SHEPARD delivered the opinion of the court:

1. The first error complained of is the refusal of the court to instruct the jury to return a verdict for the defendant. The case was one proper to be submitted to the jury, and the court did not err in refusing the instruction. As the judgment must be reversed for an error in the charge, and the case remanded for another trial. we do not think it advisable to review the evidence or to express any opinion with respect thereto, further than to say that it does not present a case where " but one reasonable view can be taken of the evidence and of its every intendment, and that view is utterly opposed to the plaintiff's right to recover." *Railroad Co.* v. *Carrington,* 3 App. D. C. 101.

Wherever there is any uncertainty as to the existence of either negligence or contributory negligence, the question must be left to the jury. *Delaware, etc., Railroad Co.* v. *Converse,* 139 U. S. 469, 472 ; *Railway Co.* v. *Powers,* 149 U. S. 43; *Gardner* v. *M. C. Railroad Co.,* 150 U. S. 349; *G. T. Railroad Co.* v. *Ives,* 144 U. S. 408, 419 ; *Walter* v. *B. & O. Railroad Co., ante,* p. 20.

This evidence differed materially from that in each of the cases relied on by the appellant, viz., *Railroad Co.* v. *Houston,* 95 U. S. 697, and *Elliott* v. *Chicago, etc., Railroad Co.,* 150 U. S. 245, where, from the uncontradicted evidence, no other conclusion could be reached than that the proximate cause of the death of the parties was their own contributory negligence.

2. The first, second and third special prayers asked by the plaintiff are subject to some criticism on account of their elaborate enumeration and frequent repetition of the elements of negligence which the jury might find to exist in the case as made by the plaintiff, yet we cannot say that it was error to give them to the jury. In order that they

might determine whether there was negligence on the part of defendant, or contributory negligence on the part of the plaintiff's intestate, it was proper to call the attention of the jury to the relative rights, duties and obligations of the respective parties at a place commonly used as a crossing, if the evidence showed it to be such a place. If it had been used as a crossing to such an extent as that the defendant must reasonably have known of such user, without objecting thereto and taking steps to prevent it, if indeed it had any right to prevent it, then the deceased was not a trespasser, and it was proper to tell the jury of the established distinction between the degree of care which a railway company is bound to exercise towards a mere trespasser upon its tracks and towards those who may have occasion to cross them at a place commonly used and resorted to for that purpose. *Taylor* v. *D. & H. Canal Co.*, 113 Pa. St. 174, 175 ; *G. T. Railroad Co.* v. *Ives*, 144 U. S. 408. Although at any crossing a steam railway company usually has the right of way, yet the duties and obligations of it and parties who travel the roads or pathway are mutual and reciprocal, and both are charged with the duty of keeping a careful lookout for danger. *Continental Imp. Co.* v. *Stead*, 95 U. S. 161, 165. It is true the crossing in question was not a regular highway or traveled street, but it had been used as a crossing by pedestrians without apparent objection ; and whilst the defendant may not have been required to exercise so high a degree of care as at a regular street crossing, still a certain amount of care was requisite, and it was proper to so instruct the jury. The exact amount of care which any one is called upon to exercise at a given time and place to avoid injury to others or to himself necessarily varies with the facts and circumstances of each particular case. *Delaware, &c., Railway Co.* v. *Converse*, 139 U. S. 469, 473 ; *G. T. Railroad Co.* v. *Ives*, 144 U. S. 408.

It was proper also to direct the attention of the jury to the ordinance regulating the speed of trains, and to charge

them that a failure to observe it would be negligence, the effect of which they might consider in determining whether the injury to deceased was the result of his own or the defendant's want of care. Had the train been moving within the prescribrd limit of speed it is not altogether unreasonable to suppose that deceased might possibly have passed the track without injury, and consequently it was a matter for the consideration of the jury, along with others. Of course the mere fact that defendant may have disobeyed the ordinance would not render it liable unless such disobedience may have had some appreciable agency in producing the injury. Had it been plain that the injury was due to deceased's own negligence in going carelessly in front of an approaching train and taking his chances of avoiding it, then the mere fact that the train was moving at an unlawful rate of speed would not relieve him from the consequences of his own negligence. There was nothing in the instruction to negative the foregoing proposition, and when considered in connection with other special instructions given on behalf of defendant it is manifest that the jury could have received no impression to the effect that they could find for the plaintiff on this ground without regard to the want of due care on the part of deceascd. For like reasons it was not error to permit the jury to take into consideration the character of the surrounding grounds, the uses of the siding and switch track at the time, and the probable obstructions to sight and sound incidental thereto. These were all pertinent circumstances in connection with the use of the place as a crossing, the absence of warning, and the unlawful speed of the train. *G. T. Railroad Co.* v. *Ives*, 144 U. S. 408, 419.

3. A more difficult question arises on the exceptions taken to certain parts of the special prayers given on behalf of the plaintiff relating to the failure of the defendant to take precautions to warn the public of approaching trains at the place of the accident. The references in the first three special prayers to the absence of signals, warnings,

etc., may be said to be called for by, and to be responsive to, the evidence offered by defendant, to the effect that the engine bell had been continuously rung from the time of passing Bennings Station, and that the whistle had been sounded some 450 feet or more from the crossing.

.But in another special instruction, after referring again to the accustomed use of the pathway and the knowledge of defendant and its want of objection thereto, the following words, to which the exception apply, were used: " Then it was the duty of the defendant to take and use all reasonable precautions to warn the public of the approach of trains at such crossings, and a failure of the defendant to do this would warrant the jury in finding that the defendant was guilty of negligence, and in determining whether there was or was not such negligence the jury should take into consideration the topography of the adjacent country and obstacles that may have been placed there by the defendant, and what, if any, signals were given of the approaching train and the time when they were given if they were given."

(1.) The first objection is founded upon an alleged act of the Legislative Assembly of the District, approved June 26, 1873, which makes it unlawful for railway companies to ring bells or sound whistles within the limits of the city of Washington, though no penalty is provided for its violation. This seems to be such a municipal regulation as was clearly within the power of that body to enact (*Stoutenburgh v. Hennick*, 129 U. S. 141), and it may be conceded that the court was bound to take notice of it, if still in force. We shall not turn aside now, however, to inquire whether this ordinance had been repealed or superseded by other regulations, since enacted, relating to such matters, because we deem it unnecessary to do so. The instruction excepted to did not in terms mention ringing the bell or blowing the whistle as proper means of warning. The existence of the ordinance was not in fact brought to the attention of the trial court ; it is here cited for the first time.

The evidence of defendant tending to show that these particular signals had been given at the time and place in question, in accordance with its general practice in running trains, was apparently offered in good faith to support its particular line of defence, and necessarily negatived the existence of any such ordinance, and any defence that might be founded thereon.

The trial having proceeded upon the theory that no such regulation was in force, and this through the acquiescence, if not the suggestion, of the defendant, it cannot now be heard to claim error therein. *N. Y. E. Railroad Co.* v. *Fifth Nat. Bank*, 135 U. S. 432. Moreover, the error, if error it may be, was one of omission merely, and the defendant should have directed the attention of the court to the point by a special prayer ; failing this it may be regarded as waived. *Express Co.* v. *Kountze Bros.*, 8 Wall. 342, 353 ; *First Unitarian Soc.* v. *Faulkner*, 91 U. S. 415, 423 ; *Carter* v. *Carusi*, 112 U. S. 478, 484.

(2.) The second ground of objection now urged is thus stated by appellant: " It left to the jury to determine what particular kind of precautions, what signals, what notices the defendant should have given. They were permitted to conjecture what kind of a precaution, or sign, or signal would have been efficacious, and this too in the absence of any proof as to what would be a reasonable precaution suitable to the extent of the danger at this point."

We cannot see that the jury could have been misled by anything in the charge complained of to the prejudice of any legal right of the defendant. If apprehensive that too much was left to the discretion of the jury, the defendant might have submitted a special prayer limiting or qualifying the one given, in the particulars in which it was thought to have gone too far. Rules of law, founded in sound public policy, demand that at public crossings or other places where, within the knowledge of the railway company, persons are accustomed to cross the tracks, it must exercise reasonable care to prevent the doing of injury ; the de-

gree of care varying with the dangers and demands of the situation.

Where a statute or ordinance makes complete regulations governing the precautions to be observed by steam railways as such places to guard against accident, it is the duty of the court to give them in its charge to the jury, limiting their consideration to the observance of those regulations exclusively. But where there are no such regulations at all, or they cannot be construed as intended to be complete and exclusive, then what may or may not have been reasonable and proper precautions, warnings and signals, under all the circumstances surrounding the occurrence, would become a question of mixed law and fact, and therefore one for the determination of the jury under the direction and control of the court.

In the case of *Dyer* v. *Erie Railroad Co.*, 71 N. Y. 228, relied on by appellant, the court sustained the soundness of the charge to the effect that it was the duty of the railway company to give proper signals and in a manner that would reasonably give notice to persons seeking to cross the tracks, so that they might, with due care, avoid danger, holding that other precautions than those prescribed by a statute might, under some circumstances, be reasonable and necessary. It was held, however, that a charge was erroneous which left it to the jury to say that a particular signal or precaution should have been given or observed, and the case of *Beisiegel* v. *N. Y. C. Railroad*, 40 N. Y. 9, wherein it was held that it was not proper to submit to the jury whether a flagman ought to have been stationed at a crossing, was cited with express approval. We have also been referred to a decision of the Supreme Court of the District of Columbia, in general term, wherein it was said: " Whenever it appears from the whole tenor of the charge that, whether designedly or by inadvertence, the court has gone so far as to leave an impression upon the minds of the jury that they have a right to go beyond the general inquiry as to reasonable care and diligence and to establish

for themselves a particular standard of diligence, there is error." *Springman* v. *B. & P. Railroad Co.*, 5 Mackey, 1, 6.

As an abstract proposition of law, that quoted above may be conceded to be sound ; but as the instructions discussed are not set out in the statement of the case, nor given in the opinion, it is impossible to say just what bearing that decision has on the particular point under discussion in this case.

The instruction given in this case did not inform the jury that they could find whether the failure to have a flagman or a gate at the place of the accident was negligence, nor, on the other hand, did it inform them that they could not take the omission into consideration at all. There was, however, no evidence offered regarding or referring to either the reasonableness or the practicability of having a flagman at the place of the accident, and, taking into consideration all the evidence and the general tenor of the instructions offered and given, it is more than probable that the jury did not consider the existence or non-existence of any other warnings or precautions than the sounding of bell and whistle and the observance of the regulation concerning the speed of trains within the city limits. But, be this as it may, the instruction as given is fairly within the principle of the rule laid down by the Supreme Court of the United States in *G. T. Railroad Co.* v. *Ives*, 144 U. S. 408, 419. In that case the plaintiff's intestate was killed at a point where a public road crossed the railway at grade. The train which caused the injury was running at a rate of speed greater than prescribed by law, and no signal was given of its approach. There were some houses near the crossing which obstructed to some extent the view of trains coming from the direction whence that train came. There was no flagman at the crossing. The statute of Michigan charged the State railroad commissioner with the duty of designating places where flagmen should be stationed, and it was shown that he had not required one at that crossing. The

trial judge, after having, in the first part of the charge, told the jury that the law did not require the use at public crossings of the "most highly developed and best methods of saving the life of travelers on the highway, but only such as reasonable care and prudence would dictate under the circumstances of the particular case," called attention to the situation generally, and then said: "It was reasonable that the railroad company should provide special safeguards to persons using the crossing in a prudent and cautious manner, and the law authorizes you to infer negligence on its part for any failure to adopt such safeguards as would have given warning, although you have a statute in Michigan which undertakes by its provisions to secure such safeguards in the way the statute point out. The duty may exist outside the statute to provide flagmen or gates or other adequate warnings or appliances, if the situation of the crossing reasonably requires that—and of this you are the judge—and it depends upon the general rule that the company must use its privilege of crossing the streets on its surface grade with due and reasonable care for the rights of other persons using the highway with proper care and caution on their part. So if you find that the train hands kept no proper lookout and managed the train without due caution and reasonable care, you will be authorized to infer negligence on the part of the company as one of the facts established in the case." Mr. Justice LAMAR said: "That this instruction is in harmony with the general rule of law, obtaining in most of the States, and at common law, we think there can be no doubt."

In that case the crossing was a much travelled public highway, and necessarily greater care and more precautions for giving warnings should be required at such a place than at one subject to the occasional uses shown by the evidence in this case; consequently, by quoting the charge in that case, we are not to be understood as intimating that in all cases where there may be a public crossing of even frequent use within the knowledge of the railway company,

the jury are to be left to consider and determine whether it was negligence not to have a flagman or gate at the point, in the absence of any statutory requirement to that effect.

The charge in this case does not, in terms, go so far, and any misleading effect that it could possibly have had, as we have before said, might have been corrected, if the attention of the trial justice had been called thereto by a special prayer on the part of the defendant.

The reasonableness of the need of these extraordinary precautions at a particular point is very largely a question of law, and should only be submitted to the jury when there is evidence tending to show the existence of a situation and circumstances peculiar and exceptional in their nature. *Delaware Railroad Co.* v. *Converse,* 139 U. S. 469, 473 ; *State, use of Foy,* v. *P. W. & B. Railroad Co.,* 47 Md. 76, 85 ; *Haas* v. *G. R. & I. Railroad Co.,* 47 Mich. 401, 406. That this is the doctrine also of *Railroad Co.* v. *Ives, supra,* we think appears in the following quotation from the opinion therein : "As a general rule it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman at a crossing that is especially dangerous, is a question of fact for a jury to determine under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence ; although in some cases it has been held that it is a question of law for the court. It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous ; as for instance, that it is in a thickly populated portion of a town or city ; or that the view of the track is obstructed by the company itself or by other objects proper in themselves; or that the crossing is a much travelled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle or confu-

sion incident to railway or other business ; or by reason of some such like cause ; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."

As this case must be tried anew it is proper to say that under the evidence with respect to the character and uses of this crossing, the court would not be justified in submitting to the jury the question whether the omission to have a flagman there was negligence on the part of the defendant.

For this reason, however, and especially if it should transpire that the ordinance making it unlawful to give the ordinary warnings by ringing the bell and sounding the whistle, on the approaching engine, was then in full force, greater care ought to be observed by those in charge of the train with respect to controlling its rate of speed and keeping a close lookout ahead, in order to avoid injury to persons lawfully using the crossing.

4. The last assignment of error is founded on the exceptions taken to the special prayer of the plaintiff, defining the measure of damages, which was given in the charge to the jury. It reads as follows:

" The jury is instructed that if they find for the plaintiff, the measure of damages is the pecuniary loss sustained by the widow and the next of kin by reason of the death of the deceased; that in estimating damages the jury are to take into consideration any prospective inheritance the widow and next of kin of the deceased might reasonably have expected to derive from him—any prospective support that would have been received—and also the value of his paternal advice and guidance, and this is to be considered with reference to any minor child who was living with him, in so far as the jury may be able to fix a pecuniary value upon it. To such extent as the jury may find that they were of pecuniary value you will take that pecuniary value into account in estimating the damages, and in estimating

the damages with reference to the items of prospective inheritance, gifts and legal support, maintenance, the health and strength of the deceased, and his advice and counsel, the jury should take into consideration the nature of the employment of the deceased and the remuneration therefor, together with the prospective duration of his life."

Several distinct objections are made to the correctness of this instruction, which will be separately considered.

(1.) The first is, that the jury were instructed to consider, in estimating the damages sustained, the value of the prospective gifts by the deceased in case he had lived out the ordinary expectation of his life. Deceased left four children—all sons—and a widow who died before the trial. Three of these sons were from twenty-five to thirty-four years old; the fourth was about twenty. They were unmarried and lived with their father, paying no board. The three older ones were at work and receiving wages; but it does not appear that they contributed to the maintenance of the family. Deceased was fifty-nine years old, in vigorous health, and labored under no physical disability. He owned property worth from $8,000 to $10,000, including his home, and was a carpenter, earning at the time about $3.00 per day.

Under Lord Campbell's act and the statutes copied or adapted therefrom—the act of Congress under which this suit is maintained being of the same general purport—it has been generally held that children and next of kin are not necessarily limited, in the estimate of their damages, to that which they had a legal right to expect from the deceased during the ordinary continuance of life; but that any evidence showing the receipt of gifts or the performance of valuable services, under such circumstances as that their continuance might be deemed reasonably probable during the life of deceased, might also constitute a basis of estimate in assessing the damages. *District of Columbia* v. *Wilcox*, 4 App. D. C. 90. And the courts have generally been quite liberal in sustaining verdicts based on such evi-

dence. There must, however, be some evidence to justify the submission of an item of damages of that kind to the jury. *Dalton* v. *Railroad Co.*, 4 C. B. (N. S.) 296 ; S. C. 93 E. C. L. 296 ; *B. & O. Railroad* v. *State*, 63 Md. 135, 145 ; *C. & N. W. Railroad Co.* v. *Bayfield*, 37 Mich. 205 ; *St. L., A. & T. Railroad Co.* v. *Johnston*, 78 Tex. 536, 542 ; *C. & N. W. Railroad Co.* v. *Swett*, 45 Ill. 197, 205.

There is no evidence in this case tending to show that deceased ever made a gift to his sons, or that they had any expectation thereof. The widow and minor son were entitled to support from the father; the adult sons were not. As, however, the evidence shows that the deceased gave them their board, and that they had reason to expect a continuance of his bounty in that regard, it is contended that this furnished a foundation for consideration of gifts. This is plausible, and might be sufficient were it not that the jury had already been expressly charged to consider in their estimate " any prospective support that would have been received." In the very sentence, too, in which the word " gifts" is used, the next following words are, "and legal support, maintenance." Necessarily, therefore, the effect of the instruction was to permit the amount that might be assessed for prospective support to be increased by an allowance for the value of prospective gifts. The objection must be held to be well taken.

(2.) Where minor children have lost a mother, through the negligent act of another, the loss of her care, education and training have often been declared an element of pecuniary injury, proper to be considered by the jury in the assessment of compensatory damages. The leading case, universally cited in support of this proposition—*Tilley* v. *Railroad Co.*, 29 N. Y. 252—goes to the extreme length of saying that this should not be limited to the termination of minority even. And the same general rule, without this extreme application, has been applied in the case of the death of a father also. *Stoher* v. *S. L. & C. Railroad Co.*, 91 Mo. 511, 518 ; *Kelly* v. *C. S. & S. P. Railroad Co.*, 50

Wis. 381; *B. & O. Railroad Co.* v. *Weightman*, 29 Gratt., 436, 443; *Howard* v. *Legg*, 93 Ind. 523, 530; *Searle* v. *Railway Co.*, 32 W. Va. 370, 376; *C., R. I. & P. Railroad Co.*, v. *Austin*, 69 Ill. 426, 429. In this last case, however, it was said that before the submission of that item of damage there must be evidence tending to show capacity on the part of the parent, by nature, education and disposition, to furnish education and training. Granting the soundness of the rule in the case of minor children, there would seem to be no good reason in extending the compensation for such loss, in the case of either parent, beyond the period of minority.

The instruction under consideration in this case included not only the assessment of the value of " paternal advice and guidance "—which may probably be considered the equivalent of education and training—to the son who was not twenty-one years of age, but also that of " advice and counsel " to the three grown sons, the oldest of whom was thirty-four. We think this carried the doctrine entirely too far.

It is quite generally conceded that the damages to be assessed under statutes of this kind must be of a pecuniary nature. Now, we can readily conceive how, under many circumstances, the advice and counsel of a good and sensible father might be of inestimable moral value to a son of mature years even ; but we cannot see how an assessment of pecuniary damages can reasonably be founded thereon. It is too remote, vague and uncertain to be considered in the estimation of pecuniary injury and compensatory damages therefor. Liberal as the interpretations of the statutes have deservedly been, they have never been held to require the giving of a gratuity. " The recovery is to compensate a loss and not to confer a bounty." *St. L. A. & T. Railroad Co.* v. *Johnston*, 78 Tex. 536, 542.

(3.) The point of greatest difficulty in this case is the direction to the jury to take into consideration, in. estimating damages, "any prospective inheritance the widow and next

of kin of the deceased might reasonably have been expected to derive from him." To the technical objection that the widow could not take anything by inheritance, it may be answered that, conceding the verbal inaccuracy of the reference to her, no harm could have resulted therefrom. The whole value of the possible inheritance would have had to be assessed anyhow, even if the widow had been expressly excluded. Under the peculiar terms of our statute, whatever may be recovered on account of a special injury to one, inures to the benefit of all, and the defendant has no right to complain. *District of Columbia* v. *Wilcox, supra.*

The language of this instruction has the sanction of Tiffany, in his treatise on Death by Wrongful Act (sec. 160 and cases cited), which is strongly relied on by appellee. We will not consume time with a review of the cases cited. It is sufficient to say that after careful consideration we have not been satisfied with the soundness of their reasoning.

As has been before intimated, the latitude permitted to a jury in the assessment of damages for loss sustained by death, has necessarily, and not unjustly, been very great. By their very nature the items of damage which have generally been recognized as proper matters of consideration do not admit of calculation approximating mathematical certainty, yet they have been generally sufficient to the ends of justice, tempered as they have been by the undoubted power of the trial judge to set aside verdicts clearly unreasonable and excessive. The natural sympathies of juries likely to be excited in such cases must be under some just and reasonable restraint. They should not be permitted to roam at will the whole field of speculation in the search for remote possibilities of damage that may be taken into account to swell the aggregate of their verdict. If they are permitted to do so by the sanction of the law, by what right shall a court undertake to reduce the amount of a verdict to such sum as the trial judge may deem fair and reasonable, by requiring a *remittitur*, under penalty of a new

trial? Would it not be arbitrarily substituting trial by the court for the trial by jury, which latter is as much the right of the defendant as of the plaintiff?

Let us consider a few of the contingencies which beset inquiry into the possible benefits which next of kin might receive in the way of inheritance from the deceased. There are the uncertainties of life and the continuation of apparent perfect health and strength to labor and accumulate; the indisposition as well as the inability of approaching age to continue the labors and endure the privations of earlier years; the reasonable disposition of age to enjoy more and more the fruits of early toil and self-denial, and the possibility of the consumption of savings in necessary support, if life should be unexpectedly prolonged; the probabilities of unfortunate and disastrous investments, and all the unforseen misfortunes that attend upon the management of human affairs; the prospect of the diminution of the estate by the very gifts, advances, support and maintenance which of themselves form an element for the separate assessment of damages; and lastly, the possibility that the deceased may by will cut off all possible enjoyment of his estate by the next of kin. Suppose that, in this instance, the deceased had left a will disinheriting his sons, could they have recovered for a probable or possible loss of inheritance by his death? If so, it could be upon the conjecture only, that had he lived he might have destroyed the will and died intestate at last.

These considerations, it seems to us, make it extremely unlikely that Congress, in passing this act, contemplated its extension to such damages. Had it intended to make the damages recoverable under the statute arbitrary and absolute, as in the nature of a penalty, it would have been easy and most natural to say so.

The case of *Railroad Co.* v. *Barron*, 5 Wall. 90, is relied upon as necessarily controlling the decision upon this point. That case, it is true, goes very far in support of appellee's contention, and we have heretofore followed it on a ques-

tion of pleading damages under the statute in the case of *District of Columbia* v. *Wilcox, supra.* But we do not regard it as necessarily controlling on the point here in question. That case arose in Illinois under the statute of that State, which, however, must be admitted to be of the same general purport as that prevailing here. This point was passed over with brief notice, and it would seem from the references in the opinion that the charge below was deemed in accord with previous decisions of the Supreme Court of Illinois involving a construction of the same statute. Since then the Supreme Court of Illinois has brought the statute, by construction, within the principle for which we contend. *C. & N. W. Railroad Co.* v. *Swett*, 45 Ill. 197, 204.

We have been able to find no case in which the Supreme Court of the United States has construed the act of Congress with reference to this precise point. By analogy, however, our view is supported by a recent decision of that court on writ of error to the Supreme Court of this District. *B. & P. Railway Co.* v. *Mackey*, 157 U. S. 72. In that case the charge to the jury was this: "Now, manifestly, you cannot estimate in dollars and cents exactly what the damages are in a case of this kind, if there be any at all. That is not possible. But you may and you should take into consideration the age of the man, his health and strength, his capacity to earn money as you discover it from the evidence, his family—who they are and who they consist of—and then, gentlemen, from all the facts and all the circumstances, make up your mind how much this family, if anything, probably lose by his death, and that would be how much had this family a reasonable expectation of receiving; how much had they a reasonable expectation of receiving, *while he lived*, if he had not been killed."

That charge plainly followed the prevailing rule in the construction of such statutes, that the damage of the family is the loss of what they were accustomed to receive and had a reasonable expectation of receiving during the probable continuation of the life. To that end evidence of

D. C.]                    Opinion of the Court.

the age, health, probable duration of life, earnings and capacity to earn money, has almost universally been held admissible.   The foregoing charge met with the approval of the court, and the judgment was affirmed.

The history of the proceedings in this case, we think, forcibly illustrates the reason of the rule for which we have expressed our preference.   Deceased had but the four children, all sons.   Three of these had long passed majority; the fourth was nearly of age.   None of them labored under mental or physical disabilities.   Deceased, who was fifty-nine, was earning about three dollars a day as a carpenter· Unaided, he was supporting the family and giving them a home.   There would seem but little room here for additions to his estate through his labor.   The jury returned a verdict for $7,000, one-half of which the trial justice caused to be remitted under the penalty of a new trial in case of refusal.

For the errors pointed out, *the judgment must be reversed with costs to the appellant, and the cause remanded for a new trial; and it is so ordered.*

On May 27, 1895, *Mr. Arnold* and *Mr. Wilson*, on behalf of the appellee, filed a motion for a rehearing.

On June 18, 1895, counsel for both parties were allowed to file briefs as to the correct measure of damages, on or before October 14, 1895.

On November 6, 1895, the motion for rehearing was overruled.