(Decided 6th February, 1885.)

---

THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE STATE OF MARYLAND, use of MARTHA E. MAHONE, and others.

*Death through Negligence—Carrier of Passengers—Presumption of Negligence on part of Carrier—Burden of Proof—Prima facie case for Plaintiff—Relation of Carrier and Passenger—Action against Railroad Company, under sections 1 and 2, of Article 65, of the Code— Measure of Damages—Negligence by person Killed.*

In an action against a railroad company to recover damages for the death of a passenger, claimed to have been caused by the negligence of the defendant, the plaintiff must prove not only the *injury* done, but also the negligence of the defendant. But there may be

cases in which the proof of the injury *under certain circumstances*, necessarily raises a presumption of negligence on the part of the defendant.

The *carrier* is bound to exercise the greatest care and diligence in everything that concerns the safety of passengers; and if one is injured by the breaking down or upsetting of the vehicle used in the transportation, or by the colliding of one train with another, or by the train running off the track from some defect in the road-bed, in these, and in other like cases, the *evidentiary facts* in themselves create a presumption of negligence on the part of the carrier.

Under such circumstances, the carrier must show that the accident happened in spite of the exercise by him and his servants, of the greatest degree of care and diligence practicable under the circumstances.

Although the burden of proof is on the plaintiff to show that the injury was occasioned by the negligence of the defendant, yet he discharges this burden and makes out a *prima facie case* by showing that the accident happened through the failure of some of the means used by the carrier in making the transit.

To create the relation of carrier and passenger, it is not necessary that the latter should actually have entered the train. If he had purchased a ticket and was crossing the track by and under the direction of the ticket agent, for the purpose of taking the train, he is to be considered as a passenger, and as such entitled to all the rights and protection of one.

An action to recover damages for the death of a passenger through alleged negligence, was brought under sections 1 and 2, of Article 65, of the Code, which provides that in such " actions the jury may give such damages as they may think proportionate to the injury resulting from such death, to the parties respectively for whom and for whose benefit such action shall be brought." The equitable plaintiffs were a married daughter, and two sons of the deceased, all of whom were over twenty-one years of age. The deceased made her permanent home with the daughter, and attended to the house-work, and looked after the children while the daughter was away at work. These services enabled the daughter to work out constantly, and when so at work she earned six dollars a week. After her mother's death, she had not been able to go out to work, because she had no one to take care of the house and children. The sons were both married, and the mother, although she made her home with her daughter, was in the habit of assisting in nursing

Balto. & Ohio R. R. Co. *vs.* State, use of Mahone.

the sick members of her two sons' families. How often she went, how long she remained, and what were the value of such services, nowhere appeared in the proof. Nor was there any evidence to show that either of the sons, before or after the death of their mother, was obliged to employ some one to nurse in case of sickness. HELD:

1st. That the services rendered by the mother were the pecuniary benefit, which the daughter had a right to expect from the continuance of her mother's life.

2nd. That the value of such services under the circumstances, was the measure by which damages were to be assessed by the jury; and not what the daughter might earn by going out to work.

3rd. That there was no evidence *legally sufficient* to warrant the jury in finding that the sons had sustained any pecuniary loss, actual or in expectation, from the death of their mother.

The deceased had purchased her ticket, and was waiting outside of the ticket office for the train which she purposed to take. The platform at which the train was to stop, was on the opposite side of the track. There was evidence to show that the agent at the station, notified the deceased of the approach of the train, and directed her to cross over to the platform in ample time for her to do so in safety, but that after getting almost across, she turned and went back to the ticket office to look after a bundle, and did so against the agent's directions; and then against the warning of a bystander, attempted to cross the track, in consequence of which she was killed. HELD:

That if her death occurred under such circumstances, it resulted from her own negligence, and the plaintiffs were not entitled to recover.

APPEAL from the Court of Common Pleas.

This action was brought by the appellee against the appellant under Article 65, of the Code, to recover damages for the injury caused to the equitable plaintiffs by the killing of their mother, Hannah Queen, by an engine and train belonging to the defendant. The case is stated in the opinion of the Court.

*First Exception*, abandoned.

*Second Exception.*—At the trial, the plaintiff offered the five following prayers:

Balto. & Ohio R. R. Co. *vs.* State, use of Mahone.

1. If the jury find from the evidence, that the defendant was, on the first day of August, 1883, possessed of railroad tracks running past Mount Winans station, in Baltimore County, over which it ran cars, in which it carried passengers for hire and reward, and that on the above mentioned day, Hannah Queen went to the said station of the defendant, for the purpose of riding upon such cars, and was possessed of a ticket entitling her to do so, and if the jury find that she was told by the agent of the defendant, having charge of said station, after having come to the said station, to come across the track to take her train; that in obedience to this, she went over the tracks of the defendant, towards the platform habitually used by passengers taking the train she intended to take of defendant, on the opposite side of the tracks from the ticket office where she then was, and that whilst so doing she was run over and killed by a train of cars operated by the defendant's agents and employés, then if the jury find that the equitable plaintiffs are related to her, as set forth in the pleadings herein, and that the said killing resulted directly from the want of the degree of care and prudence which it was practicable for the agent or any of the servants of the defendant to use, having a due regard to the nature of their employment, and the efficient prosecution of the business of the road, and not from the want of ordinary care and prudence of the deceased, directly contributing to the accident, then the plaintiffs are entitled to a verdict; if the jury further find that they have by the death of the said Hannah, sustained a pecuniary loss.

2. If the jury find that the deceased was at the station of the defendant, possessed of a ticket, and with the intention of taking the train, and that whilst so there and crossing the tracks under the direction of the agent of the defendant, she was killed by defendant's cars, the presumption is that the injury resulted from the negligence of the defendant, unless the defendant shows that said injury did not result from its negligence.

3. In considering the question of negligence, it is competent for the jury in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the deceased, from the general and known disposition of persons to take care of themselves and to keep out of the way of difficulty and danger.

4. If the jury find for the plaintiffs, then in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Hannah Queen, and give the equitable plaintiffs such pecuniary damages, not only for past losses, if they find any loss, but for such prospective damages as the jury may find that they have suffered, or will suffer as the direct consequence of the death of the said Hannah Queen.

5. If the jury shall find for the plaintiffs, then in awarding the damages to which the plaintiffs are entitled, they must apportion them among the equitable plaintiffs in such shares, respectively, as they shall find and direct.

And the defendant offered the nine prayers following:

1. That upon the pleadings and evidence in this cause, the plaintiffs are not entitled to recover in this action.

2. That as there is no evidence in the cause legally sufficient to show that the death of Hannah Queen was caused by any negligence or want of skill and care on the part of the defendant or its agents, the plaintiffs cannot recover in this action.

3. If the jury shall believe from the evidence that Hannah Queen, the mother of the plaintiffs, John A. Queen and James H. Queen, and Martha E. Mahone, the wife of Thomas R. Mahone, for more than three years prior to the happening of the accident mentioned in the declaration which it is alleged caused her death, made her home with, the said Thomas R. and Martha E. Mahone, and was supported by them and her two said sons, and that all of her said children were over twenty-one years of age, and married at the time of the death of the said Hannah

Queen, and not dependent for their support upon said Hannah Queen, then the plaintiffs are not entitled to recover in this action, although the jury may further find from the evidence in the cause, that the said Hannah Queen, while she lived with the said Mahones, rendered various domestic services to them, and also visited the homes of her said sons when there was any sickness in their families.

4. Even if the jury find that the death of the deceased occurred through the negligence of the defendant or its agents, yet the plaintiffs cannot recover, because the negligence of the deceased directly contributed thereto.

5. If the jury shall find from the evidence that the deceased, Hannah Queen, was twice told by the witness, Story, defendant's agent, that her train was coming, to come across at a time when the train was sufficiently distant for her to do so with safety, and that she heard said call and did not follow, but hesitated, and afterwards attempted to cross when it was too late to do so, and was killed in so doing, then the plaintiffs are not entitled to recover.

6. If the jury find for the plaintiffs, then in assessing damages they must not consider the anguish and distress of mind caused to the children of deceased by her death, but in making up their verdict should allow for all losses occasioned by her death to her children, and confine themselves to such sum as they shall find the services of said deceased were worth.

7. That if the jury, should find for the plaintiffs, they cannot, in assessing the damages, take into account the money that could have been earned by Martha E. Mahone, by her labor, in case deceased had not been killed, but must confine themselves to the strict value in money of the services rendered by the said deceased, if they had been rendered to any other person.

8. That there has been no evidence offered by the plaintiffs legally sufficient to entitle the equitable plaintiffs, John A. Queen and James H. Queen, to recover any damages in this action.

9. That if the jury believe from the evidence, that the deceased, after being twice told by defendant's agent, Story, to come across, and that her train was coming, at a time when she could safely have done so, was afterwards told by the witness, Rezin Williams, that it was too late for her to come across, and attempted to cross in spite of said warning, and without looking for said train, then the plaintiffs cannot recover.

The Court (PHELPS, J.,) granted the first, third, fourth, and fifth prayers of the plaintiffs, as offered, and the second prayer of the plaintiffs, with the following modification, to wit: "Or that the accident could have been avoided by the exercise of ordinary care on the part of the deceased."

And granted the defendant's sixth prayer, as offered; and its fifth prayer with the following modification: "Provided they find, that in so hesitating, and afterwards attempting to cross when too late, the deceased failed to exercise ordinary care and prudence, in view of all the circumstances which the jury may find surrounded her at the time." And granted the defendant's ninth prayer, with the following proviso: "Provided they find, that in so attempting to cross, the deceased failed to exercise ordinary care and prudence, in view of all the circumstances which the jury may find surrounded her at the time."

And rejected the defendant's first, second, third, fourth, seventh, and eighth prayers. The defendant excepted. The defendant also specially excepted to the granting of the plaintiffs' prayers, and each of them, on the ground that there was no evidence to support the same.

The jury rendered a verdict for the plaintiffs, to be distributed as follows: To Mrs. Mahone, $1000; to John A. Queen, $100, and to James H. Queen, $100. The Court entered judgment on the verdict for $1200, with interest, &c.

The cause was argued before ALVEY, C. J., STONE, MIL-LER, and ROBINSON, J.

*W. Irvine Cross*, and *John K. Cowen*, for the appellant.

*William S. Bryan, Jr.*, and *John T. Ensor*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The Court was right in this case, we think, in leaving the question of *negligence* on the part of the appellant to the finding of the jury. The deceased, a colored woman, about forty-seven years of age, had purchased a ticket, from Mount Winans to Baltimore City. Mount Winans, is a third class station at which the way trains stop on signal by the conductor or the ticket agent. At this station, there are two platforms,—one on the north side of the track where the ticket office is situated, for passengers going towards Washington, and the other, on the south side, for passengers going towards Baltimore. The deceased was sitting on a bench outside of the ticket office waiting for the way train then overdue; and while sitting there, the whistle of an approaching train was heard. The ticket agent turning to her said, "Come old lady, your train is coming, come across," and while in the act of crossing the track, she was run over and killed by the engine and cars of the appellant.

It is insisted, there was no evidence from which the jury could reasonably find negligence on the part of the appellant, and the Court below ought not therefore to have submitted the question to the jury. If the case rested solely on the evidence offered by the appellant, there might be some ground for this contention. This evidence shows the distance between the two platforms is *twenty-two feet*—that when Story, the ticket agent, directed the deceased to cross the track to the opposite platform,

the train had just turned the curve in the road, a point at least a half mile from the station, that after getting almost across, she threw up her hands and exclaimed, "my bundle, my bundle,"—that Story told her to "come across," he would get the bundle, instead of doing so, however, she turned and went back to the office to look after the bundle—that going back she met the witness Williams between the tracks who told her she "hadn't *time to go back and get the bundle* and get over *before the train comes.*" In spite of this additional warning, she went back to the office, and afterwards attempted to cross the track in front of the approaching train and was killed. All the witnesses on the part of the appellant, and the witness Ware, on the part of the appellee, say she had time, ample time, to have crossed the track when Story first notified her.

There is evidence, however, on the part of the appellee, from which it may be inferred that the deceased hardly had time to do so safely—that Story himself did not start across until the train had passed the whistling post, which is only about *one-quarter of a mile,* from the station—and that when he got across, she was only three or four feet behind him. In directing her to cross the track for the purpose of taking the train, it was his duty to see that she had time to do so in safety, and if there was negligence on his part in this respect, in consequence of which the deceased was killed, the railway company is responsible. And as there is a conflict in the testimony upon this point, the Court was right in leaving the question to the jury.

Nor do we see any objection to the appellee's second prayer, as modified by the Court. In actions of this kind, the plaintiff must, it is true, prove not only the *injury,* but also the negligence of the defendant. But there may be cases in which the proof of the injury *under certain circumstances,* necessarily raises a presumption of negligence on

the part of the defendant. The cases of *Christie vs. Griggs,* 2 *Camp.,* 79; *Stokes vs. Saltonstall,* 13 *Peters,* 181; *Stockton vs. Frey,* 4 *Gill,* 406; *Carpue vs. London & Brighton R. R. Co.,* 5 *Q. B.,* 749, (48 *E. C. L.,*) and *Skinner vs. London R. R. Co.,* 5 *Exch.,* 786, are familiar illustrations of the application of this principle. These cases proceed on the ground, that the *carrier,* is bound to exercise the greatest care and diligence, in every thing that concerns the safety of passengers; and if one is injured by the breaking down or upsetting of the vehicle used in the transportation, or by the colliding of one train with another, or by the train running off the track, from some defect in the road-bed, in these and in other like cases, the *evidentiary facts* in themselves create a presumption of negligence on the part of the carrier. Under such circumstances, the carrier must show that the accident happened in spite of the exercise by him and his servants, of the greatest degree of care and diligence, practicable under the circumstances. In other words, although the burden of proof is on the plaintiff to show that the injury was occasioned by the negligence of the defendant, yet he discharges this burden and makes out a *prima facie case,* by showing that the accident happened through the failure of some of the means used by the carrier in making the transit.

It was not necessary in this case to create the relation of carrier and passenger, that the deceased should actually have entered the train; if she had purchased a ticket, and was crossing the track by and under the direction of the ticket agent, for the purpose of taking the train, she is to be considered as a passenger, and as such entitled to the rights and protection of a passenger; and it was the duty of the agent so far as human care and prudence could, to guard against exposing her to danger. And if in the act of crossing the track under such circumstances, she was without any fault on her part, run over and killed by the

engine and cars, it is but reasonable to presume, that her death was occasioned by the negligence of the agent of the company. And so the Court instructed the jury. The Court did not say that the *mere proof* of the fact that she was killed, while crossing the track, was in itself sufficient to raise a presumption of negligence against the appellant, but in addition to this fact, the jury were required to find that she had purchased a ticket and was crossing the track under the direction of the agent of the company for the purpose of taking the train, and while in the act of crossing, she was without any negligence on her part run over and killed by the train of the appellant. The finding of these facts, was in our opinion sufficient to make out a *prima facie* case of negligence against the railway company.

We come now to the question of damages as presented by the appellant's sixth prayer. This suit is brought under secs. 1 and 2 of Art. 65 of the Code, which provide that in "every such action, the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought."

The plaintiffs are a married daughter, and two sons, all of whom are over twenty-one years of age. In *Balto. & Ohio R. R. Co. vs. State, use of Hauer, et al.,* 60 *Md.,* 449, it was held not to be necessary to prove that the persons described in the statute, had a claim upon the deceased for support or services which amounted to a legal right, but that proof of a *reasonable* expectation of pecuniary benefit or advantage from a continuance of the life of the person killed, was sufficient to support the action.

Now in this case, the proof shows that the deceased made her permanent home with her daughter Martha, one of the plaintiffs—that she attended to the house-work and looked after the children, while the daughter was away at work—that these services, enabled the daughter

to work out constantly, and when so at work she earned six dollars a week, and that since her mother's death, she had not been able to go out and work, because she had no one to take care of the house and children.

It may not be an easy matter, to lay down a fixed and definite rule by which compensation is to be measured in actions of this kind. The statute provides the jury may give such damages as they may think proportioned to the injury, but it does not prescribe in terms on what principle the damages are to be assessed. It may however be considered as settled law, that damages are not to be given as a *solatium* for grief or mental suffering on the part of the relatives of the deceased. This was decided in the leading case of *Blake vs. The Midland Railway Company*, 18 *Q. B.*, 93, upon the construction of the Statute of 9 and 10 Vic., chap. 93, known as Lord CAMPBELL'S Act, from which the provisions in our Code are almost a literal transcript.

It is also well settled, that the claim for damages must be founded on *pecuniary loss, actual* or *expected*, suffered by the persons described in the statute. *Franklin vs. South Eastern R. R. Comp.*, 3 *Hurl. & Nor.*, 211. The right to maintain the action, is therefore based on the pecuniary interest of the plaintiffs in the life of the person killed and the value of such interest is the measure by which damages are to be allowed. If so, then the services rendered by the mother in this case, is the pecuniary benefit which the daughter had a right to expect from a continuance of her mother's life.

And the value of such services under the circumstances, was the measure by which damages were to be assessed by the jury. Not what the daughter might earn by going out to work, as contended by the appellees, because by getting some one to perform the services rendered by the mother, to attend to the house and her children, she may still be able to go out and work.

The sixth prayer of the appellant, which asked the Court to instruct the jury, that in assessing the damages, they must not take into account, the money earned by the daughter by her own labor, but must confine themselves to the value of the services rendered by the mother, as if they had been rendered by any other person, ought to have been granted.

As to the two sons, John and James, there is no evidence *legally sufficient* to warrant the jury in finding they had sustained any pecuniary loss, actual or in expectation, from the death of their mother. The proof is, that John is twenty-six years old, is married, and has one child; and James is twenty-eight years old, married, and has two children. The mother, although she made her home with her daughter Martha, was in the habit of assisting in nursing the sick members of her two sons' families. How often she went, how long she remained, and what was the value of such services, no where appears. Nor is there any evidence to show that either of them, before or after the death of their mother, was obliged to employ some one to nurse in case of sickness. There is no proof then of pecuniary benefit or pecuniary loss. To attempt to assess damages under such circumstances, would be to indulge in mere conjecture and speculation,—mere guess work at the best.

In *Dalton vs. South Eastern Railway Co.*, 93 *Eng. C. L.*, 296, and *Franklin vs. South Eastern Railway Co.*, 3 *Hurl. & Nor.*, 211, relied on by the appellees, the proof was altogether of a different character. In *Dalton's Case*, the son who was unmarried, had been in the habit of making a visit to his parents once a fortnight, for the last seven or eight years, and taking them on these occasions, presents of tea, sugar, and other provisions, amounting in the whole to twenty pounds a year, and it was held, that the jury were warranted in inferring, that the father had such a reasonable expectation of pecuniary benefit

from the continuance of his son's life, as to entitle him to recover damages under the statute. So in *Franklin's Case*, the father had been employed to carry up coals to the ward of the hospital, for which he was paid 3 *s.* 6 *d.* a week, but in consequence of ill health, the son had for sometime performed the work for his father. As to whether there was any evidence to show that the father had a reasonable expectation of pecuniary benefit from the continuance of his son's life, POLLOCK, C. B., said: "There was. The plaintiff was old and getting infirm; the son young, earning good wages, and apparently well disposed to assist his father, and in fact he had so assisted him to the value of 3 *s.* 6 *d.* a week."

In this case, there is no proof that either of the sons, had a reasonable expectation of pecuniary benefit from the continuance of the mother's life, and the Court ought to have granted the appellant's eighth prayer.

As to the fifth and ninth prayers of the appellant, it is sufficient to say, that if Story, the agent, gave the deceased ample notice to have crossed the track in safety— and after getting half-way across, she turned and went back to the ticket office to look after her bundle, and did so against the agent's directions, and then against the warning of the witness Williams, attempted to cross the track, in consequence of which she was killed, her death, under such circumstances, resulted from her own negligence, and the plaintiffs were not entitled to recover. As the case will be remanded, an instruction can be prepared in conformity with these views. We see no objection to the several prayers granted by the Court at the instance of the appellees, so far as they apply to the right of action of the daughter Martha. But there was error in refusing to grant the seventh and eighth prayers of the appellant, and the judgment must therefore be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 6th February, 1885.)