SHABBIR AHMED CHOUDHRY V. LOLITA D. FOWLKES, No. 1148, Sept. Term 2017

**HEADNOTE:**

DEATH>ELEMENTS OF COMPENSATION

To recover economic damages for the loss of household services, a beneficiary must: (1) identify domestic services that have a market value; (2) have reasonably expected the decedent to provide the identified services, which—absent the decedent's legal obligation to provide the services—will typically require evidence showing that the decedent was regularly providing the services in the past; and (3) present some evidence concerning the duration the decedent would have likely provided the services.

Circuit Court for Baltimore City
Case No. 24-C-16-001919

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1148

September Term, 2017
_____

SHABBIR AHMED CHOUDHRY

v.

LOLITA D. FOWLKES
_____

Meredith,
Friedman,
Eyler, Deborah S.
     (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Friedman, J.
_____

Filed:  November 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The wrongful death of a child, no matter that child's age, is an unimaginable loss. A jury found Shabbir Choudhry, M.D., liable for the wrongful death of Lolita Fowlkes' daughter, 22-year-old Yenita Owens. As a result, the jury awarded Fowlkes $500,000 in noneconomic damages and $500,000 in economic damages for the loss of Owens' services. During trial, Fowlkes, who had lived with Owens since her daughter's birth, testified that her daughter completed various household chores for about two hours per day and that she hoped to live with Owens forever. Choudhry twice moved for judgment as to Fowlkes' damages claim for the loss of Owens' services, but the Circuit Court for Baltimore City denied the motions.

On appeal, Choudhry asserts that the circuit court erred in denying his motions for judgment as to Fowlkes' economic damages claim. We agree. Accordingly, we reverse the $500,000 jury award for the loss of Owens' services.

## BACKGROUND

In March 2013, 22-year-old Owens died from complications related to necrotizing fasciitis, a severe infection in her leg and groin area. As a result, Owens' mother, Fowlkes, filed a wrongful death action against various medical providers who treated Owens, including Choudhry.[1]

---

[1] Because Choudhry was the only defendant found liable during trial and is the only appellant, we will not further discuss the other defendants.

During trial, Fowlkes, then 44 years old, testified that Owens had lived with her for Owens' entire life. Owens was born when Fowlkes was 17 years old, and Fowlkes had raised Owens as a single mother. Fowlkes testified that Owens was her best friend.

Fowlkes relayed that, as Owens got older, she helped Fowlkes around the house. Owens would clean the bathroom, wash dishes, mop the floor, and vacuum. Fowlkes did not drive, and Owens would drive Fowlkes to places like Wal-Mart and Sam's Club using another family member's car. Fowlkes estimated that Owens spent about two hours each day performing these tasks for her. Fowlkes testified that if she could continue to live with Owens, then she "was going to live with her forever."

During Fowlkes' case-in-chief, her counsel asked the court to take judicial notice of life expectancy tables to assist the jury in evaluating the joint life expectancy of Fowlkes and Owens, pertinent to Fowlkes' claim for damages based on the loss of Owens' services. Though counsel took the position that the market value of the services Owens provided to Fowlkes was within the common knowledge of the jurors, counsel also asked the court to take judicial notice of the minimum wage statute[2] to provide a "baseline" value of those services to the jury. The court denied both requests. Concerning the life expectancy tables, the court said, "I see no reason to take judicial notice of that because I don't know what the life expectancy of this woman would have been based on her medical condition."[3] As

---

[2] Presumably counsel was referencing section 3-413(c) of the Labor and Employment Article, which sets forth State minimum wage rates based on year. MD. CODE, LABOR AND EMPLOYMENT § 3-413(c).

[3] During the course of the trial, the jury heard evidence about Owens' various physical and medical conditions, including that she was overweight, had a history of asthma, had chronic swelling of her legs, had a history of high blood pressure, took pain

2

to the minimum wage statute, the court commented that if the value of the services was within the jurors' common knowledge, judicial notice was not necessary. The court pointed out that counsel had "every right to argue to the trier of fact what you believe the value of something is."

At the close of Fowlkes' case-in-chief, Choudhry moved for judgment under Maryland Rule 2-519 as to Fowlkes' damages claim for the loss of Owens' household services. Defense counsel argued that the evidence Fowlkes presented was insufficient as a matter of law to submit the damages claim to the jury. The court denied the motion. At the close of all the evidence, Choudhry renewed his motion for judgment as to the damages claim for loss of household services, but the court again denied the motion.

The jury found Choudhry liable for Owens' death. The jury then awarded Fowlkes $500,000 in noneconomic damages and $500,000 in economic damages for the loss of Owens' services.

On appeal, Choudhry challenges only the $500,000 jury award for economic damages described as "loss of services."

## DISCUSSION

Choudhry asserts that the trial court erred when it denied his motion for judgment as to Fowlkes' damages claim for the loss of household services for two reasons. *First*, he contends that the household services that Fowlkes testified Owens performed do not constitute a recoverable pecuniary loss. *Second*, he asserts that even if such household

---

medication, and suffered from the autoimmune disease lupus, which had damaged her kidneys.

chores can be recovered as a pecuniary loss, Fowlkes nonetheless presented insufficient evidence to support any non-speculative damages award.

Under Maryland Rule 2-519, any "party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." MD. RULE 2-519(a). When ruling on a motion for judgment in a jury trial, the trial "court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made." MD. RULE 2-519(b). When reviewing the trial court's denial of a motion for judgment, we "perform the same task as the trial court, affirming the denial of the motion if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question." *Prince George's Cty. v. Morales*, 230 Md. App. 699, 711 (2016). Whether the types of services Owens performed for Fowlkes constitute a recoverable pecuniary loss is a question of law, which we review without deference to the trial court. *See U.S. v. Searle*, 322 Md. 1, 4, 6-7 (1991); *Khalifa v. Shannon*, 404 Md. 107, 115 (2008).

For the reasons discussed below, we hold that household services like those Owens performed may be recoverable as a pecuniary loss but that Fowlkes presented insufficient evidence to submit her damages claim to the jury. Therefore, the trial court should have granted Choudhry's motion for judgment, so we reverse the $500,000 economic damages award for the loss of Owens' services.

## I. HISTORY AND BACKGROUND

### A. The Wrongful Death Act Generally

We start with a brief overview of the wrongful death statute. "The wrongful death statute allows the decedent's beneficiaries or relatives to recover damages for loss of support or other benefits that would have been provided, had the decedent not died as a result of another's negligence." *Spangler v. McQuitty*, 449 Md 33, 53 (2016). Maryland initially adopted its wrongful death statute in 1852, and until 1969, limited recovery to pecuniary losses. *Barrett v. Charlson*, 18 Md. App. 80, 84-85 (1973). The statute has been amended over time to increase the types of damages recoverable and the beneficiaries who may recover damages for the wrongful death of a family member. H. KENNETH ARMSTRONG, ET AL., MARYLAND TORT DAMAGES 43-44 (Robert R. Michael, ed., 7th ed. 2015). It is well established that the wrongful death statute now allows a covered beneficiary to recover for both pecuniary (i.e., economic) and nonpecuniary (often referred to as noneconomic or solatium) damages resulting from the wrongful death of a family member listed in the statute. *Spangler*, 449 Md. at 69. Accordingly, a parent of an adult child undisputedly may recover both types of damages that arise from the wrongful death of an adult child. MD. CODE, COURTS AND JUDICIAL PROCEEDINGS ("CJ") § 3-904(e).

### B. Loss of Household Services as Economic Damages in a Wrongful Death Action

Turning to the concept of household services, we acknowledge that our previous cases addressing the recovery of damages for a loss of such services do not always provide

5

trial courts and litigants with clear, consistent guidance about what a beneficiary must show to be entitled to such damages. Better direction from the appellate courts is long overdue.

Consequently, upon our review of Maryland case law and other persuasive authority, we have derived the following 3-part rule for when a beneficiary in a wrongful death action may recover economic damages for the loss of household services. Specifically, we conclude that a beneficiary must: (1) identify domestic services that have a market value; (2) have reasonably expected the decedent to provide the identified services, which—absent the decedent's legal obligation to provide the services—will typically require evidence showing that the decedent was regularly providing the services in the past; and (3) present some evidence concerning the duration the decedent would have likely provided the services. We explain below.

### 1. *Identification of Domestic Services that have a Market Value*

In Maryland, "damages referred to as 'household services' can have both pecuniary and nonpecuniary aspects." *Searle*, 322 Md. at 6. The Court of Appeals has clarified under what circumstance a loss of household services will constitute a pecuniary loss:

> [W]here an award for household services is compensation for the *loss of domestic services and is based on the market value of those lost services*, the award is pecuniary and is not duplicative of the solatium damages. These are services that can be performed by domestic workers and their replacement value is measured by prevailing wage rates for such services.

*Searle*, 322 Md. at 7 (emphasis added); *see also Edmonds v. Murphy*, 83 Md. App. 133, 170 (1990) (household "services which can, but need not necessarily, be performed by hired help" constitute a pecuniary, rather than nonpecuniary, loss); *Holmes v. Criminal*

*Injuries Comp. Bd.*, 278 Md. 60, 67 (1976) ("this Court has held that the loss of domestic services performed by a relative may constitute a loss of a pecuniary nature"); *see also Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 633 (6th Cir. 1978) (under the federal Jones Act and general maritime law; "[h]auling out the garbage, mowing the lawn, making repairs, and other household tasks" that "command[] an economic price" may "be included as a part of the pecuniary loss suffered by the decedent's family").

Accordingly, a beneficiary must first identify specific household tasks that can be performed by domestic workers and, as a result, have an identifiable market value if the beneficiary is seeking an economic damages award. These tasks may include "cooking, cleaning, and gardening" and can range from "polishing the family silver to pulling up weeds from the garden." *Edmonds*, 83 Md. App. at 165. Without such an identification of specific domestic services that have a market value, economic damages awarded for a generalized claim of loss of "household services" could problematically duplicate damages awarded for the nonpecuniary[4] aspect of household services and allow a beneficiary to circumvent the noneconomic damages cap set forth in CJ § 11-108(b).

### 2. *Reasonable Expectation to the Receipt of Services*

Next, we conclude a beneficiary must set forth evidence showing that he or she had a reasonable expectation that the decedent would perform the identified household tasks.

---

[4] The nonpecuniary or noneconomic component of "household services" has been described as "services that are of such a character that they cannot be rendered by hired help and on which, by reason of their character, no market value can be placed." *Edmonds*, 83 Md. App. at 168 (cleaned up). These include "affection, society, companionship, and sexual relations." *Id*. at 169.

7

Maryland cases consistently set forth that a beneficiary must have a "reasonable expectation of pecuniary benefit or advantage[5] from a continuance of the life of the person killed." *Balt. & O.R. Co. v. State, to Use of Mahone*, 63 Md. 135, 145 (1885) ("*Mahone*"); *see also State, for use of Strepay v. Cohen*, 166 Md. 682, 172 A. 274, 279 (1934) ("*Strepay*") ("recovery for loss of services … does not depend upon a legal right in the plaintiff to valuable assistance from the dead relative, but … it is sufficient if the evidence shows that the surviving relative had a reasonable expectation of pecuniary benefits from the continuance of the life of the dead relative"); *Emp'rs Liab. Assurance Corp., for Its Own Use and to Use of Jones v. Balt. & O.R. Co.*, 173 Md. 238, 245 (1937) ("*Jones*") (action for damages under Workers' Compensation Act; economic damages are limited "to the loss of benefits which the plaintiff *because of the decedent's past conduct* might reasonably have expected to receive from him had he lived") (emphasis added). Indeed, the Supreme Court, when addressing the pecuniary loss rule, has likewise recognized that the touchstone for recovery is whether the surviving relative had "some reasonable expectation of pecuniary assistance or support of which they have been deprived." *Mich. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 70 (1913) (applying federal law).

We further glean from the case law that there are at least two ways in which a beneficiary can establish this reasonable expectation. *First*, a beneficiary may have a reasonable expectation to the receipt of services from a decedent if the decedent was under

---

[5] In this scenario, the pecuniary benefit or advantage would be the receipt of the domestic services.

a legal obligation to provide the services to the beneficiary.[6] *See*, *e.g.*, *Jones*, 173 Md. at 244-45 (recognizing as then-existing legal obligations a parent's entitlement to the services of a minor child and a husband's duty to support his wife); *Strepay*, 172 A. at 279.

*Second*, absent the decedent's legal obligation to provide the services, Maryland case law supports that a beneficiary has a reasonable expectation that a decedent will perform such tasks if the decedent has been regularly and consistently (not just occasionally) performing those tasks in the past. For example, in *Mahone*, the Court of Appeals concluded that an adult daughter suffered a pecuniary loss from the death of her mother because the evidence showed that the mother performed babysitting and housekeeping services for her daughter on a daily basis, which allowed the adult daughter to work outside of the home. *Mahone*, 63 Md. at 145-46. In contrast, in the same case the adult sons only provided evidence that the mother occasionally helped out when the sons' children were ill. *Id*. at 147. Notably absent from the record was any evidence about "[h]ow often [the mother] went, how long she remained, and what was the value of such services" through, for example, evidence that the sons had "to employ [someone] to nurse" the children after the mother's death. *Id*. Without such evidence, the sons failed to establish "a reasonable expectation of pecuniary benefit from the continuance of the mother's life." *Id*. at 148.

---

[6] We observe that generally "[a]n adult child has no legal obligation to contribute to the support of his or her parents, and the parents have no legal right to the services or earnings of an adult child." 3 JEROME H. NATES, ET AL., DAMAGES IN TORT ACTIONS § 22.06, 22-142 (Matthew Bender 2019).

Similarly, in *State, for use of Bowman v. Wooleyhan Trans. Co.*, 192 Md. 686 (1949) ("*Bowman*"), the Court of Appeals concluded an adult daughter did not suffer a pecuniary loss after the death of her mother because, while the mother visited her daughter daily, the mother only provided domestic help to her daughter "at times" when the mother, who was regularly employed elsewhere, was not working. *Id.* at 690-91. The *Bowman* Court characterized the services provided by the mother as "remote" and "occasional." *Id.* at 695. Likewise, in *Montgomery Cablevision Ltd. P'Ship v. Beynon*, 116 Md. App. 363 (1997), *rev'd on other grounds*, 351 Md. 460 (1998) ("*Montgomery Cablevision*"),[7] we reversed an award for economic damages to parents for the death of their 19-year-old son who lived at home when the father testified that his son helped around the house but gave no indication how often such services were rendered. *Id.* at 390-91; *see also Betesh v. U.S.*, 400 F. Supp. 238, 248 (D. D.C. 1974) (construing Maryland law; parents could not recover economic damages for death of 26-year-old son where there was "no record of his pecuniary support of them or of services gratuitously rendered to them"); *compare Driscoll v. U.S.*, 456 F. Supp. 143, 151 (D. Del. 1978) (construing Maryland law; wife's testimony that deceased husband performed household services such as "shopping, child care, and the making of some furniture" for two hours per week supported an award for loss of household services). Thus, consistent with prior Maryland case law, we hold that a

---

[7] The Court of Appeals granted certiorari and reversed this Court solely on the issue of whether and under what circumstances pre-impact fright damages are recoverable in survival actions. 351 Md. at 464, 469. Thus, we continue to treat as binding the *Montgomery Cablevision* Court's discussion of when economic damages for loss of services and other pecuniary benefits are recoverable in a wrongful death action. 116 Md. App. at 389-92.

beneficiary who is not otherwise legally entitled to the services typically must present *some* evidence that the deceased relative performed the household services on a consistent, regular basis to establish a reasonable expectation of a pecuniary benefit in the continued life of the deceased relative.[8] *See also* 3 JEROME H. NATES, ET AL., *supra* note 6, at § 22.06[3][a], 22-114 (recognizing that generally "regular patterns of behavior" must be shown and that "occasional or isolated acts of assistance … may not be a sufficient predicate for an award for loss of services").

### 3. *Likely Duration of the Services*

Finally, because damages may not be "speculative, remote, or uncertain," *Sugarman v. Liles*, 460 Md. 396, 439 (2018), we conclude that a beneficiary must also present some evidence tending to establish the time period during which the beneficiary could have reasonably expected the deceased relative to keep performing the household services. For example, in *Jones*, the Court of Appeals noted that the "words and conduct of the decedent manifesting an intention and purpose on his part to make future contributions of money, other things of value, or service to the plaintiff, may be relevant and material facts." *Jones*, 173 Md. at 244. The *Jones* Court further determined that damages awarded to the beneficiaries had to be limited to "the duration of the period over which the contributions

---

[8] We do not mean to suggest that these are the only two ways to ever show a reasonable expectation to the receipt of household services. We simply note that they are the primary means we have seen explained in our cases. We anticipate there may be other avenues to establish a reasonable expectation (maybe, for example, based on an express agreement between a beneficiary and decedent concerning the provision of identified services in the future), which likely will be informed by the nature of the relationship between the beneficiary and the decedent. We leave for another day the identification and development of these other avenues.

would have been made, had the decedent lived." *Id*. at 250. Likewise supporting that evidence of duration is necessary to recover for a loss of household services, in *Montgomery Cablevision*, we reversed an economic damages award based on rent and household services a deceased 19-year-old provided to his parents, in part, because there was no evidence tending to "show that the decedent planned to live with his parents *indefinitely*." 116 Md. App. at 391 (emphasis added).

We recognize that, in certain circumstances, the duration of services may be presumed due to the relationship between the beneficiary and the decedent. For example, when calculating economic damages based on the loss of services as between spouses, courts typically presume that the deceased spouse would have provided the identified household services during the couple's joint life expectancy. *See*, *e.g.*, *Driscoll*, 456 F. Supp. at 151; *Sun Cab Co. v. Walston*, 15 Md. App. 113, 143 (1972). In addition, due to the obligation of parents to support their minor children, as well as parents' legal right to the services of their children, when damages for loss of services are sought between a parent and a minor child, courts typically presume an entitlement to economic damages for the duration of the child's minority. *See*, *e.g.*, *Terry v. O'Neal*, 194 Md. 680, 690-91 (1950) (infant child allowed to recover pecuniary damages for loss of services parents would have provided until child reached majority); *Michaels v. Methvargo*, 82 Md. App. 294, 304 (1990) (recognizing right of parents to collect pecuniary damages for loss of child's services until child reaches age 18); MD. CODE, FAMILY LAW § 5-205 (Parent's right to minor child's services and earnings).

12

But as just one example, we are not aware of any presumption supporting the idea that an adult child would necessarily provide household services to a parent for any set duration simply because the parties are living together at the time of the adult child's death. Instead, absent a recognized presumption speaking to the duration of services, we conclude that a beneficiary must present some evidence—which may include "words and conduct of the decedent manifesting an intention … to make future contributions of … service to the plaintiff," as well as life expectancy evidence, *Jones*, 173 Md. App. at 244—to establish a non-speculative length of time during which the beneficiary could have reasonably expected to continue to receive the household services.[9] *Id.* (measure of damages depends "upon such facts as the probable duration of the joint lives of the plaintiff and the decedent, and whether the contributions would probably continue throughout that period, or, if not, then through what part of it they would continue"); *see also Lang v. Bouju*, 667 N.Y.S.2d 440, 442 (N.Y. App. Div. 1997) (damages to parents for loss of 22-year-old son's services supported by the evidence where son lived with parents at family's homestead, regularly assisted with substantial farm chores, had no intention of moving out, and planned to enter the family's farming business); *Hyung Kee Lee v. New York Hosp. Queens*, 987 N.Y.S.2d 436, 441 (N.Y. App. Div. 2014) (where extensive evidence showed deceased father was caretaker of adult daughter who had special needs and required lifetime care, sufficient

---

[9] We recognize that evidence tending to establish the likely duration of the services would also presumably overlap with evidence showing that the beneficiary had a reasonable expectation of receiving the services in the first place. No doubt the decedent's course of conduct in providing services in the past, as well as any express or implied words or actions of the decedent tending to show that he or she planned to continue providing the services going forward, is relevant to both issues.

evidence supported damages award for loss of those household services for period of father's life expectancy). Some evidence of duration is necessary because "the law cannot achieve justice if speculation is to be used as the basis for determining damages." *Davidson v. Miller*, 276 Md. 54, 61 (1975).

4. *Conclusion*

In sum, we conclude that a beneficiary such as a parent of a deceased adult child may recover economic damages for a loss of household services if the plaintiff-beneficiary presents evidence showing the adult child was regularly performing specific tasks that have an identifiable market value (creating a reasonable expectation in the beneficiary to the receipt of the services) and likely would have continued to provide those services for some non-speculative duration of time. We note that our formulation of the rule for the recovery of lost household services, while grounded in Maryland law, also finds support in numerous treatises that have addressed this issue after the authors extensively surveyed varied state law on the topic. For example, as set forth in one treatise:

> The attempt to evaluate the loss of the decedent's services involves the answers to several questions: What services [identification] could the beneficiaries reasonably have expected to receive [reasonable expectation]? How long would they have continued, in reasonable probability, to have received them [duration]? How much would the services have been worth [market value]?

1 JACOB A. STEIN, STEIN ON PERSONAL INJURY DAMAGES § 3:26 (3d ed. 2019); *accord* 2 STUART M. SPEISER & JAMES E. ROOKS, JR., RECOVERY FOR WRONGFUL DEATH § 6:40 (4th ed. 2018); 3 JEROME H. NATES, ET AL., *supra* note 6, at § 22.06[3][c][i][A], 22-116— 22-117 (recognizing that an assessment of lost services often includes (1) an "identification

14

and description of the services"; (2) "the extent to which the beneficiary could reasonably have expected to receive such services had the deceased lived"; and (3) "the period of time for which the services could reasonably have been rendered"); *see also id*. at 22-2 ("The overwhelming majority of loss to beneficiary jurisdictions permit recovery for the monetary value of these services, which encompass the activities associated with housekeeping and child care as well as those focusing on home maintenance and repair."). Thus, we are satisfied that our formulation is both consistent with Maryland law and with other persuasive authorities addressing when such lost services should be recoverable as economic damages. This more explicit formulation also provides needed guidance to litigants about how to pursue such damages claims in a wrongful death action. With that background firmly in place, we turn now to Choudhry's specific appellate claims.

## II.   OWENS' HOUSEHOLD CHORES AS A PECUNIARY LOSS

Choudhry first argues that the services Fowlkes testified that Owens performed—cleaning the bathroom, washing dishes, mopping the floor, vacuuming, and driving Fowlkes to run errands—do not amount to a recoverable pecuniary loss under Maryland's wrongful death statute. Characterizing the services Owens performed as "occasional," "general," and "basic" household chores, Choudhry contends that household services may only be recovered as a pecuniary loss if Owens' performance of such services created a "domestic dependency" between Fowlkes and Owens. In explaining his proposed concept of "domestic dependency," Choudhry claims that Fowlkes had to show she was reliant on Owens to perform the services for Fowlkes' overall maintenance and support. We conclude Choudhry takes too restrictive of an approach in his characterization of what household

15

services are compensable as a pecuniary loss in a wrongful death action. Instead, as discussed in Section I.B above, we hold that Fowlkes only had to show that Owens consistently provided specific domestic services with an identifiable market value—even if those services could be characterized as "basic" or "general" household chores as Choudhry puts it—and that Fowlkes reasonably expected to receive those services for some non-speculative duration of time. We are not persuaded that Fowlkes had to show anything else, though we will not belabor the point by repeating here our analysis in Section I.B.

We do note that our rejection of the phrase "domestic dependency" is not just a matter of semantics. In using that terminology (particularly the word "dependency"), Choudhry suggests that Fowlkes would have had to show an inability to perform the household services herself or that she suffered some kind of major economic hardship because her daughter could no longer perform the identified household tasks. But the cases discussed in Section I.B above, many of which are relied on by Choudhry, only speak in terms of a beneficiary having a reasonable expectation of a continued pecuniary benefit in the decedent's life, without regard to the *extent* of that benefit. *See also Alden v. Maryanov*, 406 F. Supp. 547, 550-51 (D. Md. 1976) (adult child need not show he or she is "'wholly dependent'" on deceased parent to establish pecuniary loss); *Barrett*, 18 Md. App. at 97 n.10 (recognizing that "the pecuniary benefit rule would permit recovery in cases where an adult child had been contributing to the support of parents"). Clearly, without Owens performing the identified household tasks, Fowlkes either must do them herself or hire someone else to complete those tasks. But we are not convinced by Choudhry that in order to establish economic loss as a result of her daughter's death, Fowlkes had to prove that

16

she was unable to perform the tasks herself or that she would suffer economic hardship if required to pay for replacement services (though we acknowledge that such a showing might strengthen her claim to economic damages).

In so concluding, we point out that the wrongful death statute only requires secondary beneficiaries—persons other than a parent, child, or spouse who are related to a deceased by blood or marriage—to prove that they are "*substantially* dependent upon a deceased" before they can recover damages. CJ § 3-904(b) (emphasis added); *Ditto v. Stoneberger*, 145 Md. App. 469, 490-91 (2002) (construing "substantial" in CJ § 3-904(b) to mean contributions by the decedent of "real worth and considerable value"). No such condition is expressly imposed for primary beneficiaries like Fowlkes. CJ § 3-904(a)(1), (c), (d), (e). Thus, we conclude Fowlkes did not have to show some kind of substantial dependence on Owens—what Choudhry labels a "domestic dependency"—before recovering economic damages for lost services. *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 542 (1984) (construing a wrongful death statute that expressly referenced parents, spouses, children, or "'any relative dependent'" on the deceased as only requiring a showing of dependency by such unenumerated relatives).

We now turn to whether Fowlkes presented sufficient evidence for her damages claim for the loss of Owens' services to be submitted to the jury.

III.    SUFFICIENCY OF THE EVIDENCE

Choudhry next asserts that even if Owens' performance of basic household chores could amount to a pecuniary benefit that would entitle Fowlkes to an economic damages

17

award, Fowlkes nonetheless presented insufficient evidence to submit her claim to the jury. On this point we agree.

"Damages must be proven by a preponderance of the evidence." *Fennell v. S. Md. Hosp. Ctr.*, 320 Md. 776, 791 (1990). Accordingly, Fowlkes had to present evidence from which a jury could determine that it was more likely than not that she suffered a non-speculative economic loss because of Owens' death. *Sugarman*, 460 Md. at 412, 439. Here, Choudhry specifically argues that Fowlkes failed to present sufficient evidence of the value of the household services Owens performed and the likely duration she would have completed those tasks to bring any pecuniary damages award for the loss of Owens' household services out of the realm of impermissible speculation.

We apply the three-part test set forth above and evaluate whether Fowlkes (1) identified domestic services that have a market value, (2) reasonably expected Owens to provide the identified services, and (3) presented sufficient evidence concerning the duration Owens would have likely provided the services. We note at the outset, however, that Fowlkes' testimony on the issue of economic damages is sparse and does not provide detail regarding the nature of the services Owens performed.

A. Identification of Domestic Services and Their Market Value

Fowlkes generally identified the domestic services that her daughter provided; including cleaning the bathroom, washing dishes, mopping the floor, vacuuming, and driving Fowlkes to run errands. While unquestionably domestic services, the problem comes in assigning a market value to these services. At trial, Fowlkes attempted to prove the market value using three methods. We will discuss each in turn.

18

*First*, Fowlkes offered the report of an expert economist who calculated the costs of the services Owens provided for her mother and the value of the loss of those services. This report was excluded by the trial court based on a discovery violation and Fowlkes does not challenge that decision on appeal. We note, however, that the report, if admitted, would have been useful in aiding the trier of fact. *Consolidated Mechanical Contractors, Inc. v. Ball*, 263 Md. 328, 338 (1971).

*Second*, Fowlkes requested that the trial court, pursuant to Md. Rule 5-301, take judicial notice of Maryland's minimum wage statutes to provide the jury with a "baseline" value of Owens' services. As reported above, the trial court declined to take judicial notice of the minimum wage laws because the information was within the common knowledge of the jury.[10] Although this evidence might have made the market value of Owens' services clearer, we do not believe the decision not to take judicial notice was clearly erroneous. *See Smith v. Hearst*, 48 Md. App. 135, 141 (1981) (identifying that the trial court's decision to take or not to take judicial notice is subject to the clearly erroneous standard of review and stating that there is "a legitimate range within which notice may be taken or declined and that there is efficacy in taking it, when appropriate").

---

[10] As a preliminary matter, Choudhry asserts that Fowlkes, after failing to perfect a cross-appeal, should not now be allowed to complain about the trial court declining to take judicial notice of the minimum wage statute. This assertion is incorrect. Under Maryland law, Fowlkes was neither required nor permitted to cross-appeal from the lower court's decision because the ultimate judgment rendered was in her favor. *Paolino v. McCormick & Co.*, 314 Md. 575, 579 (1989) (holding that it is impermissible for a party to appeal or cross-appeal from a judgment that was favorable to that party); *see also Offutt v. Montgomery Cty. Bd. of Ed.*, 285 Md. 557, 564 n. 4 (1979) (holding that while a prevailing party cannot appeal or cross-appeal, such a party can, as an appellee, raise an issue that it lost on at the trial level as grounds for affirming the judgment).

*Third*, Fowlkes argued that the jury could, without more, assign a monetary value to the domestic services performed by Owens. Fowlkes' position at trial and on appeal is that that the monetary value of such services is within the province of the jury to determine. To be sure, there are state courts that agree with Fowlkes' position—that the jury can place a monetary value on household services without the need for any supporting evidence. *See*, *e.g.*, *Critical Path Res., Inc. v. Cuevas*, 561 S.W.3d 523, 566 (Tex. App. 2018) ("[J]uries can apply their own knowledge and experience to estimate the value of household services."); *Wentling v. Med. Anesthesia Servs.*, 701 P.2d 939, 948 (Kan. 1985) ("[I]t is the province of the jury to determine monetary value of such loss."). Other states, however, hold that more is needed. *See, e.g., Brown v. Kennedy Mem'l Hosp.*, 711 A.2d 1370, 1377 (N.J. Super. Ct. App. Div. 1998) (affirming the vacating of a jury award for loss of services, in part, because plaintiff presented no evidence of "the value of the housekeeping and clerical services").

Maryland case law suggests that we are in the second camp, requiring more evidence of market value. In *U.S. v. Searle*, the Court of Appeals proposed that evidence of the "prevailing wage rates for such services" may be necessary to ensure that a damages award for the pecuniary loss of household services not be duplicative of any noneconomic damages award. 322 Md. at 7; *see Hughes v. Carter*, 236 Md. 484, 487 (1964) (assuming, "without deciding, that proof of any specific amount is necessary").[11] On balance, we think

---

[11] There are other Maryland cases that, if not definitively holding that there is a requirement for additional proof, suggest that it is certainly best practice to present such evidence. *See*, *e.g.*, *Walston*, 15 Md. App. at 141-42 (affirming the admission of expert testimony to establish the cost of domestic services); *Edmonds v. Murphy*, 83 Md. App.

the better view is that some evidence of the market value of services is required and are inclined to agree with Choudhry on this point. However, because of our resolution of the third element—the likely duration of services—we need not decide on the sufficiency of the evidence presented on this element.

B.  Reasonable Expectation to the Receipt of Services

Choudhry does not explicitly argue that Fowlkes failed to present sufficient evidence showing that she had a reasonable expectation to the receipt of Owens' services, the second part of our three-part rule. As such, we assume, without deciding, that the evidence was sufficient as to this issue.

C.  Likely Duration of the Services

Even if Fowlkes did not have to present evidence of the specific market value or replacement cost of the services once she identified tasks that undoubtedly have a market value (that is, tasks that can be completed by domestic workers), we would still reverse. We agree with Choudhry that Fowlkes presented insufficient evidence as to the likely duration of such services to submit her damages claim to the jury. Initially, we note that Fowlkes' testimony about how long Owens had even been performing the identified household tasks was unclear. To be sure, Fowlkes testified that Owens, upon her death, had been performing such chores for approximately "two hours a day." But Fowlkes did not give any concrete indication of how long—weeks, months, years—Owens had been

---

133, 165 (1990) (noting that both sides presented expert testimony "as to the cost of hiring someone to perform, in the future, those household services that [the wife] was no longer capable of performing").

21

engaging in such tasks, other than vaguely testifying that Owens, who was 22 years old at the time of her death, began helping out around the house as she "got older." Significantly, in addition to this lack of evidence about the past duration of the services,[12] Fowlkes also presented no evidence supporting that her daughter, who was at the start of her adult life, planned to live with Fowlkes indefinitely and to keep providing her mother household services on a daily (or any other regular) basis. *Montgomery Cablevision*, 116 Md. App. at 391; *see Jones*, 173 Md. at 244. The only clue on this matter was Fowlkes stating that she "was going to live with her forever" when asked if she planned to continue living with her daughter. Without more, however, this fails to answer the question of how long Owens would have provided household services for her mother.

We recognize that Fowlkes testified to the strong, loving bond she shared with Owens, as well as Fowlkes' hope that she could live with her daughter forever. But as we pointed out in Section I.B.3, we are not aware of any presumption—and Fowlkes does not reference one—supporting that an adult child would necessarily provide household services to a parent for any set duration simply because the parties are living together at the time of the adult child's death, especially when the adult child is as young as Owens was. Without such a presumption, Fowlkes needed to provide some evidence that *Owens—*

---

[12] As noted in footnote 9, evidence speaking to duration will often overlap with evidence relevant to showing a beneficiary had a reasonable expectation as to the receipt of a deceased's services in the first place. Here, while the issue of reasonable expectation is not before us, we point out that this lack of concrete evidence indicating for how long Owens had actually been performing daily tasks for Fowlkes might also undermine a conclusion that she had a reasonable expectation to the receipt of the services going forward. Fowlkes also admits on appeal that she had to show Owens was "regularly and consistently" providing her services to be entitled to an economic damages award.

22

based on Owens' own words or other conduct manifesting her future plans—intended to continue providing the identified household tasks to her mother on a regular basis in the future. *Jones*, 173 Md. App. at 244; *Montgomery Cablevision*, 116 Md. App. at 391. This was not sufficiently established by Fowlkes' vague testimony about Owens' prior completion of those services for some indefinite past period while they remained living together[13] and Fowlkes' hope that the arrangement would never change.[14]

We are cognizant that Fowlkes suffered a devastating loss due to the wrongful death of her 22-year-old daughter. But economic damages, especially future damages, must be established with reasonable certainty. *See Sugarman*, 460 Md. at 445. For the reasons discussed herein, the trial court should have granted Choudhry's motion for judgment as to Fowlkes' economic damages claim for the loss of Owens' household services. We, therefore, reverse the jury's award of $500,000 in economic damages.

---

[13] Because Choudhry further argues that Fowlkes failed to present sufficient evidence of her own and Owens' life expectancies to establish the duration of the services, Fowlkes also asserts that the trial court erred when it denied her request to take judicial notice of certain life expectancy tables. Even if the life expectancy tables had been admitted, Fowlkes' evidence of duration was insufficient as a matter of law because Fowlkes failed to present adequate evidence supporting that her 22-year-old daughter intended to keep living with her or otherwise intended to keep performing daily household services for her *during that lifetime*.

[14] While the issue is not disputed, we point out that the jury was properly instructed that it had to reduce to present value any economic damages it awarded to Fowlkes based on the loss of Owens' future services. MPJI-Cv 10:28 PRESENT VALUE QUALIFICATION—WRONGFUL DEATH; *Watson v. Sun Cab. Co., Inc.*, 267 Md. 559, 574-575 (1973).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY FOR $500,000 IN ECONOMIC DAMAGES FOR LOSS OF SERVICES REVERSED. COSTS TO BE PAID BY APPELLEE.**